1
2
3
4
5
6
7
8
9
10

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

Ulysses Herbert Grant,
Petitioner
-vs-
Charles L. Ryan, et al.,
Respondents.

CV-12-2606-PHX-PGR (JFM)

**Report & Recommendation On Petition**
**For Writ Of Habeas Corpus**

11

## I. MATTER UNDER CONSIDERATION

12    Petitioner, presently incarcerated in the Arizona State Prison Complex at

13 Florence, Arizona, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. §

14 2254 on December 7, 2012 (Doc. 1).   On April 29, 2013 Respondents filed their

15 Response (Doc. 16). Respondents have also filed a Supplemental Exhibit (Doc. 20),

16 and Supplemental Answer (Doc. 26).   Petitioner has filed a Reply on May 31, 2013

17 (Doc.  17), a first Supplemental Reply (Doc. 22), a second Supplemental Reply (Doc.

18 28), and third Supplement (Doc. 29).

19    The Petitioner's Petition is now ripe for consideration.   Accordingly, the

20 undersigned makes the following proposed findings of fact, report, and recommendation

21 pursuant to Rule 8(b), Rules Governing Section 2254 Cases, Rule 72(b), Federal Rules

22 of Civil Procedure, 28 U.S.C. § 636(b) and Rule 72.2(a)(2), Local Rules of Civil

23 Procedure.

24

25 ## II. RELEVANT FACTUAL & PROCEDURAL BACKGROUND

26 ### A. FACTUAL BACKGROUND

27    In  disposing  of  Petitioner's  direct  appeal,  the  Arizona  Court  of  Appeals

28
                                        1

summarized the factual background as follows:

> The victim testified that he had met Defendant in April of 2006, had visited with him on two occasions in the victim's apartment and that Defendant had been a passenger in the victim's car a couple of times. The victim said that Defendant came to his apartment one night in May, the two visited for a while, and the victim then went to take a shower. When he returned to the living room, Defendant was there but left soon after. The victim then decided to go to the store, found his car, missing, returned to his apartment, and found his spare keys were missing from a dresser drawer. He had never given Defendant permission to drive the car. The victim called police the next day. Police recovered the vehicle a week later, and when the victim claimed his car, his spare keys were in it.
>
> A police officer testified that he noticed Defendant driving the victim's car, ran the out-of-state license plate, and learned that the car had been reported stolen. He arrested Defendant.

(Exhibit CC, Mem. Dec. 9/2/08 at 3.)


## B. PROCEEDINGS AT TRIAL

On March 5, 2007, Petitioner was indicted (Exhibit A) in the Maricopa County Superior Court on one count of theft of a means of transportation. The state alleged a series of historical priors (Exhibit C, Allegation; Exhibit D, Supplemental Allegation), and that the offense was committed while Petitioner was on release on another conviction (Exhibit C).

Prior to trial, Petitioner filed a Motion in Limine (Exhibit E) to exclude, *inter alia*, evidence of Petitioner's refusal to give his name and providing a false name, as well as his invocation of his right to remain silent., and a Supplemental Motion in Limine (Exhibit F) seeking to preclude any in-court identification by the victim, Stewart, based upon the victim's vague description of the perpetrator ("Philip", "black," 6'2" and 150 pounds) and his representation to police that he would not be able to identify him if he saw him again.

It was then discovered that the victim had previously been shown a photo lineup during which he had identified the Petitioner. That fact had not been previously disclosed by the prosecution. Petitioner filed a Motion to Preclude (Exhibit H) evidence

2

of the photo lineup.

The trial court granted in part the Motion in Limine, Supplemental Motion in Limine and Motion to Preclude, and the state filed a Motion to Reconsider (Exhibit J). The court conducted an evidentiary hearing on the issue.  The court initially ruled that not only would all evidence of the photo lineup be excluded, but that no in-court identification would be allowed.  (Exhibit K, R.T. 7/11/7 at 11.)  Eventually, however, "[t]he court concluded from the victim's testimony that he could identify Defendant without reliance on the lineup." (Exhibit CC, Mem. Dec. 9/2/08 at 3.)        The        trial court ruled: "IT IS ORDERED identification of Defendant in court by victim is denied, but allowed if given by independent means of prior meeting and not photo lineup." (Exhibit L, M.E. 7/11/7 at 2.)

The Court also ruled that evidence of the false name and invocation of the right to remain silent could not be introduced, based in part upon Petitioner's assertion that he gave a false name because of fear of prosecution on outstanding warrant.  (Exhibit K, R.T. 7/11/7 at 17-18.

At trial, the victim identified Petitioner "[t]he guy that stole my car."  (Exhibit M, R.T. 7/12/7 at 29.)

On cross examination, defense counsel attempted to challenge the victim's identification:

> Q And you described this associate of yours other than the information that you had provided to him you told the officer that you would not be able to visually identify this associate who you had in your apartment, correct?
> A  No.
> Q   You told him on that day you would not be able to identify anyone, correct?
> A  No.
> Q   Are you indicating that officer got your information wrong then?
> A  Evidently.
> Q  Okay.
> A  Why would I tell him who stole my car, but I can't recognize him because I told him that?
> Q When he specifically asked you if you could identify the suspect, you indicated no, correct?

A   I don't recall saying no.
Q   You didn't mention anything to the officer regarding this interaction that took place and someone going for a walk and whatnot, correct?
A   I don't recall if I said that or not.
Q   Okay. And yet today well over a year later now you're prepared to make an identification, correct?
A   I've already made one a few months back, maybe six months.
Q   Excuse me, if I could just --
THE COURT: Yes. I'm going to ask you if you would please respond to the question asked of you if you would, sir, thank you.

(Exhibit M, R.T. 7/12/7 at 43-44.)

The arresting officer testified that at the time of arrest, Petitioner was "beligerant" [sic], "wouldn't say anything, wouldn't tell me his name…I asked his name several times, he wouldn't look at me or answer my questions."  (Exhibit M, R.T. 7/12/7 at 70.)

Petitioner was found guilty as charged (Exhibit P, Verdict) and was sentenced to 11.25 years in prison (Exhibit T, Sentence; Exhibit S, R.T. 8/22/7 at 37).


## C.  PROCEEDINGS ON DIRECT APPEAL

Petitioner filed a direct appeal.  Counsel was appointed, who filed a brief (Exhibit W) pursuant to *Anders v. California*, 386 U.S. 738 (1967) evidencing an inability to find an issue for review.

Petitioner then filed a *pro per* Supplemental Opening Brief (Exhibit BB), challenging the photo lineup, reliance on one of the historical priors, and sentencing based on a historical prior arising from a probation improperly revoked.  The Arizona Court of Appeals found that no evidence of the photo lineup was admitted at trial, and that trial court properly found that the victim could make an in-court identification independent of any taint from the photo lineup.  The court rejected the other arguments as well, and affirmed Petitioner's conviction and sentence.  (Exhibit CC, Mem. Dec. 9/2/08.)

Petitioner did not seek further direct review.  (Exhibit CC, Order and Mandate, 3/19/09.)

4

**D.  PROCEEDINGS ON POST-CONVICTION RELIEF**

On September 22, 2008, Petitioner commenced his first post-conviction relief ("PCR") proceeding by filing his Notice of Post-Conviction Relief (Exhibit DD). Counsel was appointed (Exhibit EE, M.E. 10/9/8), who eventually filed a Notice of Completion of Review (Exhibit GG) evidencing an inability to find an issue for review.

Petitioner filed a Request for Preparation of Post-Conviction Relief Record (Exhibit II), seeking *inter alia* transcripts of all pre-trial conferences and settlement conferences.  The request was denied for lack of good cause, but Petitioner was granted an extension of time to file his petition.  (Exhibit KK, M.E. 3/16/9.)

Petitioner then filed a Second Request for Post-Conviction Relief Records (Exhibit LL), again seeking the pre-trial conference records from July 3, 5, and 10, 2007. The PCR court found the transcript of the July 3, 2007 continuance hearing irrelevant, the transcript of the July 5, 2007 hearing available from counsel (who was ordered to forward it to Petitioner), and that no hearing had been held on July 10, 2007.  A second extension to file a petition was granted.  (Exhibit MM, M.E. 4/16/9.)

Petitioner filed his Petition for Post Conviction Relief (Exhibit NN), arguing that at trial the victim had referenced a photo lineup "maybe six months" before trial (Exhibit M, R.T. 7/12/7), *i.e.* according to Plaintiff in February 2007, which would have been separate from the disclosed lineup occurring in approximately September, 2006.[1] Petitioner asserted claims of: (1) prosecutorial misconduct based on failure to disclose the photo lineup and the potential second lineup and to correct the victim's testimony; and (2) ineffective assistance of counsel based upon counsel's inviting testimony about the photo lineup from the victim and then failing to object to the resulting testimony and having it stricken.[2]

---

[1]  The prosecution argued to the trial court that the photo lineup had been conducted "approximately three months after the date of the alleged crime."  (Exhibit J, Mot. Reconsider at 2.)  The theft occurred on May 31, 2006.  (Exhibit A, Indictment.)

[2]  Petitioner filed a Supplement (Exhibit PP) to his PCR petition.  Respondents have provided only the first page.  That page explains that the supplement is to provide an annexed "Certification."   The undersigned presumes that this references the

1    Respondents argued, *inter alia,* that there was no second photo lineup.  (Exhibit

2    QQ, PCR Response.)

3    The trial court found the claims of prosecutorial misconduct based on the first

4    photo lineup and failure to correct the victim's testimony precluded by Petitioner's

5    failure to raise them on direct appeal.  The trial court found the claim of prosecutorial

6    misconduct based on a purported second photo lineup unsupported by the record.  The

7    trial court found that the claim of ineffective assistance was without merit because: (1)

8    counsel properly moved to exclude evidence of the photo lineup and the in-court

9    identification; (2) counsel could have made a reasonable strategic decision to not

10   highlight the reference to the prior identification by further objecting to the victim's

11   reference to it; and (3) Petitioner failed to show prejudice given the circumstances of the

12   involvement between Petitioner and the victim, and Petitioner's arrest in possession of

13   the vehicle and missing keys.  (Exhibit SS, M.E. 1/28/10.)

14   Petitioner moved for rehearing (Exhibit TT), which was denied (Exhibit UU,

15   M.E. 6/24/10.)

16   Petitioner filed a Petition for Review (Exhibit VV), again arguing prosecutorial

17   misconduct and trial counsel's ineffectiveness.  Petitioner then filed an "Amendment to

18   the Post-Conviction Relief Petition" (Exhibit YY), arguing that the trial court erred in

19   allowing the in-court identification and testimony about the prior identification.  The

20   court treated this as a motion to amend the petition for review, and denied it.  (Exhibit

21   ZZ, Order 1/25/12.) The court also denied a motion to consolidate the proceeding with

22   Petitioner's petition for review in his second PCR proceeding.  (*Id.*)   On June 1, 2012,

23   the court summarily denied the Petition for Review.  (Exhibit AAA, Order 6/1/12.)

24   Petitioner then sought review by the Arizona Supreme Court (Exhibit BBB),

25   which was summarily denied on September 13, 2012 (Exhibit CCC).

26

27

28   certification required by Ariz. R. Crim. P. 32.5 that all known grounds have been
     included in the petition.

**E.  SECOND POST-CONVICTION RELIEF PROCEEDING**

On July 21, 2011, during the pendency of his Petition for Review in his first PCR proceeding, Petitioner filed a "Successive Petition for Post-Conviction Relief" (Exhibit DDD), asserting his actual innocence and newly discovered evidence based upon: (1) the abuse of discretion in the trial court permitting the testimony by the arresting officer about conversations with Petitioner after informing him of his *Miranda* rights; (2) prosecutorial misconduct on the issue; and (3) ineffective assistance of counsel with regard to the issue.

The trial court summarily dismissed the petition, finding the petition untimely under Ariz. R. Crim. P. 32.4(a), and unqualified for any exception, including those for actual innocence and newly discovered evidence.  (Exhibit EEE, M.E. 9/26/11.)

Petitioner filed a Motion for Rehearing (Exhibit FFF) and Motion for Writ of Mandamus (Exhibit GGG), which the PCR court denied.  (Exhibit III, M.E. 1/5/12)

Petitioner filed a Petition for Review (Exhibit HHH), and a Reply (Exhibit JJJ). In the latter, he sought to refute the assertions of the state that his claims did not amount to actual innocence or newly discovered evidence claims.

The Court of Appeals summarily dismissed the petition for review as untimely, prior to the PCR court's ruling on the motion for rehearing.  (Exhibit UUU, Order 11/29/11.)  Upon issuance of the PCR court's order, the Court of Appeals reinstated the petition for review.  (Exhibit KKK, Pet. Rev. at Attachment, Order 1/25/12; Exhibit VVV, Order 4/11/13.)

On May 30, 2013, during the pendency of this proceeding, the Arizona Court of Appeals granted review but denied relief.  The Court found that the claims actually raised in his PCR petition were procedurally barred, stating:

> We find no error in the court's determination-Grant's claims could have been raised on appeal or in his first post-conviction proceeding, or were raised in those proceedings and rejected. Thus, they are precluded pursuant to Rule 32.2(a).

(Exhibit SA-A, Order 5/30/13 at 2.)  The court also found that Petitioner's passing

references to actual innocence and newly discovered evidence were unsupported by the actual allegations and claims raised, and that his claims about the lack of legal resources in prison was not a challenge to his conviction or sentence, and thus not cognizable.  The Arizona Court of Appeals issued its Mandate on September 26, 2013.  (2nd Suppl. Reply, Doc. 29 at Exhibit.)

## F.  PRESENT FEDERAL HABEAS PROCEEDINGS

**Petition** - Petitioner commenced the current case by filing his Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on December 7, 2012 (Doc. 1). Petitioner's Petition asserts the following four grounds for relief:

1. In Ground One, Petitioner alleges prosecutorial misconduct based on the prosecution's **failure to disclose *Brady* material** in violation of the Fifth, Sixth, and Fourteenth Amendments.

2. In Ground Two, he alleges that he received the **ineffective assistance of counsel**.

3. In Ground Three, he alleges that the trial court abused its discretion by **denying his motion in limine** in violation of his Sixth and Fourteenth Amendment rights.

4. In Ground Four, Petitioner alleges that his **rights under *Miranda v. Arizona*** were violated.

**Response** - On April 29, 2013, Respondents filed their Response ("Answer") (Doc. 16).  Respondents argue that portions of **Ground One**, and the corresponding parts of **Ground Three**, are without merit, and that the balance was procedurally barred on independent and adequate state grounds.  Respondents argue that the portion of **Ground Two** based on counsel's failure to attack admission of the victim's in-court identification is without merit, and the portion based on counsel's failure to request a *Donald* hearing at the settlement conference was procedurally barred on an independent and adequate

state ground.  Respondents argue that the claims in **Ground Four** were barred on an independent and adequate state ground.

**Reply** – Petitioner filed his original Reply (Doc. 17) on May 31, 2013.  Petitioner argues generically that he presented his claims "at all levels," and argues the merits of his claims.

**Supplemental Exhibit** – On June 19, 2013, Respondents filed a supplemental exhibit consisting of the May 30, 2013 decision by the Arizona Court of Appeals, arguing that it did not change the analysis in the Answer.

**First Supplemental Reply**- On June 24, 2013, the Court gave Petitioner an opportunity to supplement his reply to address the Respondents' supplement.  (Doc. 21.) On July 9, 2013, Petitioner filed his Supplemental Reply (Doc. 22).  Petitioner argues that this Court should find cause to excuse his procedural defaults based on failures of the state courts to address his motions for rehearing, and the denial of his motions to consolidate.  Petitioner argues that the state ruling rejecting his motion in limine claims as waived were in error because the motion in limine preserved the claim.  Petitioner argues as cause his lack of access to legal materials and dependence on other inmates. He asserts that he has only recently discovered the case law on which his claims are based.

Finally, as to his actual innocence, Petitioner now asserts:

> The Petitioner was told that there [were] groceries in the back of the vehicle, and if he could get them because Petitioner's daughter was visiting and had a birthday party.  The Petitioner just came from work and did not know or have reason to know said vehicle was stolen.

(Supp. Reply, Doc. 22 at 8.)

**Supplemental Answer** – On July 25, 2013, the Court observed that although the PCR court had rejected Petitioner's *Miranda* claim (raised herein in Ground Four) as untimely, the Arizona Court of Appeals rejected them because they "could have been raised on appeal or in his first postconviction proceeding, or were raised in those proceedings and rejected."  (Exhibit SA-A, Mem. Dec. 5/30/13 at 2.)  Because the

Arizona court failed to delineate which claims were raised and rejected and those which were not raised, the undersigned made a tentative finding that the claim had not been barred on independent and adequate state grounds, and thus was not barred. Respondents were directed to supplement their answer to address the merits of Ground Four.

On August 27, 2013, Respondents filed a Motion for Reconsideration and Supplemental Answer (Doc. 26), arguing that any reference to "raised and rejected" or "precluded" should be ignored as surplusage, because the state record supports only the conclusion that the claim had been waived by failure to present it earlier, not precluded be presentation earlier.  Nonetheless, Respondents addressed the merits of Ground Four and argue that the claim is without merit because: (1) after being arrested, Petitioner did not effectively invoke his right to remain silent and instead "elected to yell and swear at the arresting officer, refused to give his name, and ultimately provided a false name" (*id.*at 11), and (2) in light of the overwhelming evidence against Petitioner, he fails to show a substantial and injurious effect or influence on the jury's verdict.

The Court denied the Motion for Reconsideration, but directed that the arguments in support of the motion be deemed part of the supplemental answer.  (Order 8/27/13, Doc. 27.)

**Second Supplemental Reply** – On September 25, 2013, Petitioner filed his second Supplemental Reply (Doc. 28).  Petitioner argues his Ground Four should not be deemed procedurally barred because: (1) he raised the issue at trial; (2) he attempted to have it raised by appellate counsel who was ineffective for failing to pursue it; (3) he attempted to present it in his petitions for rehearing and for consolidation of his petitions for review; (4) he attempted to raise the ineffectiveness of appellate counsel in his PCR petition; (5) one appellate judge had ruled that his untimeliness had been cured; and (6) Petitioner sought review by the Arizona Supreme Court of the failure to consolidate his petitions for review.  Petitioner argues that the claim has merit because: (1) he timely

objected at trial; (2) despite being instructed not to, the State's witnesses related his provision of a false name; and (3) the evidence was prejudicial.

**Third Supplemental Reply** – On October 2, 2103, Petitioner filed a Motion to Supplement and Amend the Supplemental Reply (Doc. 29), providing a copy of the mandate of the Arizona Court of Appeals, issued September 28, 2013, and arguing that it reflects his claims were not procedurally barred or defaulted.  The Court granted the motion to the extent of accepting the additional exhibit and arguments, but denying it to the extent that Petitioner attempted to raise new claims of a denial of procedural due process by the Arizona Court of Appeals.  (Order 10/3/13, Doc. 30.)

## III. APPLICATION OF LAW TO FACTS

## A.   EXHAUSTION, PROCEDURAL DEFAULT AND INDEPENDENT AND ADEQUATE STATE GROUNDS

Respondents argue that most of Petitioner's claims are either procedurally defaulted or were procedurally barred on an independent and adequate state ground, and thus are barred from federal habeas review.

### 1. Exhaustion Requirement

Generally, a federal court has authority to review a state prisoner's claims only if available state remedies have been exhausted.  *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981) (*per curiam*). The exhaustion doctrine, first developed in case law, has been codified at 28 U.S.C. § 2254(b) and (c).  When seeking habeas relief, the burden is on the petitioner to show that he has properly exhausted each claim.  *Cartwright v. Cupp,* 650 F.2d 1103, 1104 (9th Cir. 1981)(*per curiam*), *cert. denied,* 455 U.S. 1023 (1982).

Ordinarily, "to exhaust one's state court remedies in Arizona, a petitioner must first raise the claim in a direct appeal or collaterally attack his conviction in a petition for post-conviction relief pursuant to Rule 32."  *Roettgen v. Copeland*,  33 F.3d 36, 38 (9th

11

Cir. 1994).   Only one of these avenues of relief must be exhausted before bringing a habeas petition in federal court.  This is true even where alternative avenues of reviewing constitutional issues are still available in state court.  *Brown v. Easter*, 68 F.3d 1209, 1211 (9th Cir. 1995); *Turner v. Compoy*, 827 F.2d 526, 528 (9th Cir. 1987), *cert. denied*, 489 U.S. 1059 (1989).  "In cases not carrying a life sentence or the death penalty, 'claims of Arizona state prisoners are exhausted for purposes of federal habeas once the Arizona Court of Appeals has ruled on them.'"  *Castillo v. McFadden*, 399 F.3d 993, 998 (9th Cir. 2005)(quoting *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir. 1999)).

## 2. Procedural Default

Ordinarily, unexhausted claims are dismissed *without prejudice*.  *Johnson v. Lewis*, 929 F.2d 460, 463 (9th Cir. 1991).  However, where a petitioner has failed to properly exhaust his available administrative or judicial remedies, and those remedies are now no longer available because of some procedural bar, the petitioner has "procedurally defaulted" and is generally barred from seeking habeas relief.  Dismissal *with prejudice* of a procedurally defaulted habeas claim is generally proper absent a "miscarriage of justice" which would excuse the default.  *Reed v. Ross*, 468 U.S. 1, 11 (1984).

Respondents argue that Petitioner may no longer present his unexhausted claims to the state courts.  Respondents rely upon Arizona's preclusion bar, set out in Ariz. R. Crim. Proc. 32.2(a) and time limit bar, set out in Ariz. R. Crim. P.  32.4.  (Answer, Doc. 16 at 15, n. 8.)[3]

**Remedies by Direct Appeal** - Under Ariz.R.Crim.P. 31.3, the time for filing a direct appeal expires twenty days after entry of the judgment and sentence.  Accordingly, direct appeal is no longer available for review of Petitioner's unexhausted claims.

---

[3] The Court's scheduling Order directed that "that any allegations of procedural default or application of an independent and adequate state ground shall include an indication of the specific state rule(s) and/or authorities alleged to bar the affected claim(s)."  (Order 2/15/13, Doc. 6 at 2.)  Respondents' footnote reference to Rules 32.2(a) and 32.4(a) meets the letter of that direction, but not its spirit.

**Remedies by Post-Conviction Relief** – Under Arizona's waiver and timeliness bars, Petitioner can no longer seek review by a subsequent PCR Petition.

Waiver Bar - Under the rules applicable to Arizona's post-conviction process, a claim may not ordinarily be brought in a petition for post-conviction relief that "has been waived at trial, on appeal, or in any previous collateral proceeding."   Ariz.R.Crim.P. 32.2(a)(3).   Under this rule, some claims may be deemed waived if the State simply shows "that the defendant did not raise the error at trial, on appeal, or in a previous collateral proceeding." *Stewart v. Smith*, 202 Ariz. 446, 449, 46 P.3d 1067, 1070 (2002) (quoting Ariz.R.Crim.P. 32.2, Comments).   For others of "sufficient constitutional magnitude," the State "must show that the defendant personally, "knowingly, voluntarily and intelligently' [did] not raise' the ground or denial of a right." *Id.*  That requirement is limited to those constitutional rights "that can only be waived by a defendant personally." *State v. Swoopes* 216 Ariz. 390, 399, 166 P.3d 945, 954 (App.Div. 2, 2007). Indeed, in coming to its prescription in *Stewart v. Smith*, the Arizona Supreme Court identified: (1) waiver of the right to counsel, (2) waiver of the right to a jury trial, and (3) waiver of the right to a twelve-person jury under the Arizona Constitution, as among those rights which require a personal waiver.  202 Ariz. at 450, 46 P.3d at 1071.[4]  Claims based upon ineffective assistance of counsel are determined by looking at "the nature of the right allegedly affected by counsel's ineffective performance. *Id.*

Here, none of Petitioner's claims are of the sort requiring a personal waiver, and Petitioner's claims of ineffective assistance similarly have at their core the kinds of claims not within the types identified as requiring a personal waiver, *e.g.* the fairness of identification procedures and objections to admission of evidence, etc..

---

[4] Some other types of claims addressed by the Arizona Courts in resolving the type of waiver required include: right to be present at non-critical stages (waived by omission), *Swoopes*, 216Ariz. at 403, 166 P.3d at 958; improper withdrawal of plea offer (waived by omission), *State v. Spinosa*, 200 Ariz. 503, 29 P.3d 278 (App. 2001); double jeopardy (waived by omission), *State v. Stokes*, 2007 WL 5596552 (App. 10/16/07); illegal sentence (waived by omission), *State v. Brashier*, 2009 WL 794501 (App. 2009); judge conflict of interest (waived by omission), *State v. Westmiller*,  2008 WL 2651659 (App. 2008).

13

<u>Timeliness Bar</u> - Even if not barred by preclusion, Petitioner would now be barred from raising his claims by Arizona's time bars.   Ariz.R.Crim.P. 32.4 requires that petitions for post-conviction relief (other than those which are "of-right") be filed "within ninety days after the entry of judgment and sentence or within thirty days after the issuance of the order and mandate in the direct appeal, whichever is the later."   *See* *State v. Pruett*, 185 Ariz. 128, 912 P.2d 1357 (App. 1995) (applying 32.4 to successive petition, and noting that first petition of pleading defendant deemed direct appeal for purposes of the rule).   That time has long since passed.

<u>Exceptions</u> - Rules 32.2 and  32.4(a) do not bar dilatory claims if they fall within the category of claims specified in Ariz.R.Crim.P. 32.1(d) through (h).   *See* Ariz. R. Crim. P.  32.2(b) (exceptions to preclusion bar); Ariz. R. Crim. P.  32.4(a) (exceptions to timeliness bar).   Petitioner has not asserted that any of these exceptions are applicable to his claims.   Nor does it appears that such exceptions would apply.   The rule defines the excepted claims as follows:

> d. The person is being held in custody after the sentence imposed has expired;
> e. Newly discovered material facts probably exist and such facts probably would have changed the verdict or sentence. Newly discovered material facts exist if:
> (1) The newly discovered material facts were discovered after the trial.
> (2) The defendant exercised due diligence in securing the newly discovered material facts.
> (3) The newly discovered material facts are not merely cumulative or used solely for impeachment, unless the impeachment evidence substantially undermines testimony which was of critical significance at trial such that the evidence probably would have changed the verdict or sentence.
> f. The defendant's failure to file a notice of post-conviction relief of-right or notice of appeal within the prescribed time was without fault on the defendant's part; or
> g. There has been a significant change in the law that if determined to apply to defendant's case would probably overturn the defendant's conviction or sentence; or
> h. The defendant demonstrates by clear and convincing evidence that the facts underlying the claim would be sufficient to establish that no reasonable fact-finder would have found defendant guilty of the underlying offense beyond a reasonable doubt, or that the court would not have imposed the death penalty.

14

Ariz.R.Crim.P. 32.1.

Paragraph 32.1 (d) (expired sentence) generally has no application to an Arizona prisoner who is simply attacking the validity of his conviction or sentence. Where a claim is based on "newly discovered evidence" that has previously been presented to the state courts, the evidence is no longer "newly discovered" and paragraph (e) has no application. Here, Petitioner has long ago asserted the facts underlying his claims. Paragraph (f) has no application where the petitioner filed a timely notice of post-conviction relief. Paragraph (g) has no application because Petitioner has not asserted a change in the law since his last PCR proceeding. Finally, paragraph (h), concerning claims of actual innocence, has no application to Petitioner's procedural claims.

Therefore, none of the exceptions apply, and Arizona's time and waiver bars would prevent Petitioner from returning to state court. Thus, Petitioner's claims that were not fairly presented are all now procedurally defaulted.

## 3.  Procedural Bar on Independent and Adequate State Grounds

Related to the concept of procedural default is the principle of barring claims actually disposed of by the state courts on state grounds. "[A]bsent showings of 'cause' and 'prejudice,' federal habeas relief will be unavailable when (1) 'a state court [has] declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement,' and (2) 'the state judgment rests on independent and adequate state procedural grounds.' " *Walker v. Martin*, - - - U.S. - - -, 131 S.Ct. 1120, 1127 (2011).

In *Bennett v. Mueller*, 322 F.3d 573 (9th Cir.2003), the Ninth Circuit addressed the burden of proving the independence and adequacy of a state procedural bar.

> Once the state has adequately pled the existence of an independent and adequate state procedural ground as an affirmative defense, the burden to place that defense in issue shifts to the petitioner. The petitioner may satisfy this burden by asserting specific factual allegations that demonstrate the inadequacy of the state procedure, including citation to authority demonstrating inconsistent

application of the rule. Once having done so, however, the ultimate burden is the state's.

*Id.* at 584-585.


#### 4. Application to Petitioner's Claims

    **a.  Ground One – *Brady* Violations** – In his Ground One, Petitioner asserts a claim of prosecutorial misconduct based on the prosecution's failure to disclose *Brady* material, *i.e.* "two purported photo lineup(s)," and the victim's description of the perpetrator, in violation of the Fifth, Sixth, and Fourteenth Amendments.[5]   (Petition, Doc. 1 at  6.)

    Respondents concede that the portion of this claim based upon the admitted photo-lineup was raised on direct appeal and is thus properly exhausted.  Respondents contend that the portions related to the second, purported, photo lineup was disposed of in Petitioner's first petition for post-conviction relief on the merits.  Finally, Respondents contend that the portion of the claim based on the victim's description has not been fairly presented to the state courts and is now procedurally defaulted.

    The undersigned agrees that the portions pertaining to disclosure of the first admitted photo lineup and the second purported photo lineup were properly exhausted, and will address the merits of those claims hereinafter.  The procedural status of the remaining portion related to the victim's description will be addressed.

    On direct appeal, Petitioner argued that the victim had described the perpetrator as "named Phillip, as a black male, 6'2" tall at 150 lbs at approximately 35 years old." (Exhibit BB, Supp. Open. Brief at 5.)  Petitioner described this as a "clearly wrong description."  (*Id.*)  However, Petitioner did not argue that there was any failure of the prosecution to disclose this issue.  At most, he argued it as indicia of the inaccuracy of

---

[5] Although Petitioner describes his claim related to the victim's description as a failure to disclose, there is nothing in the record to indicate that the victim's prior description had not been timely disclosed.   Defense counsel was aware of the description and its apparent defects, at least as of the time of his Supplemental Motion in Limine (Exhibit F at 1) and the hearing on the motion in limine.  (*See* Exhibit K, R.T. 7/11/7 at 9.)  No assertion was made at that time that the description given had not been properly disclosed with the police report.

16

the original description of the perpetrator to establish the unreliability of the photo lineup and resulting in-court identification.  (*Id.* at 13.)  The Arizona Court of Appeals did not address it as a separate claim.  (Exhibit CC, Mem. Dec. 9/2/08.)

In his first PCR proceeding, Petitioner argued in his original petition that he suffered from prosecutorial misconduct related to the identification processes, but did not address the victim's description.  (Exhibit NN, PCR Pet.)   In his Petition for Review, he noted the victim's description (Exhibit VV, Pet. Rev. at 5), and argued that its inaccuracy established the suggestiveness of the undisclosed photo-lineups. (*Id.* at 10.)  He did not, however, argue that the description had not been timely disclosed.

In his second PCR proceeding, Petitioner again referenced the identification (Exhibit DDD at 6), but argued a claim of prosecutorial misconduct in his petition only with regard to: (1) the prosecution presenting evidence the trial court had ruled inadmissible, e.g. Petitioner's statements to the police; and (2) presenting the wrong case agent to the jury.  (*Id.* at 4, 5.)    In his Petition for Review, he again referenced the description (Exhibit HHH, Pet. Rev. at 5), but did not assert a claim based on prosecutorial misconduct for failing to disclose. Rather, his claims of prosecutorial misconduct were based on testimony and argument in violation of Petitioner's *Miranda* rights.   In his Reply, Petitioner again raised the description, but in the context of the challenging the identification on the basis of the undisclosed photo lineup.  (Exhibit JJJ, Reply Brief at 5.)

A claim has been fairly presented to the state's highest court if petitioner has described ***both*** the operative facts and the federal legal theory on which the claim is based.  *Kelly v. Small*, 315 F.3d 1063, 1066 (9th Cir. 2003) (emphasis added).  While the petitioner need not recite "book and verse on the federal constitution," *Picard v. Connor*, 404 U.S. 270, 277-78 (1971), it is not enough that all the facts necessary to support the federal claim were before the state courts.  *Anderson v. Harless*, 459 U.S. 4, 6 (1982)(*per curiam*).

1    Accordingly, the undersigned finds that the portion of Ground One based upon a

2    failure to disclose the victim's prior description was not fairly presented to the state

3    courts, and his state remedies were not properly exhausted. Moreover, the undersigned

4    concludes, for the reasons discussed hereinabove, that the claim is now procedurally

5    defaulted.

6    **b.   Ground Two – Ineffective Assistance of Counsel** – In Ground Two,

7    Petitioner alleges that he received ineffective assistance of counsel for: (1) failing to

8    request a *Dessurealt* hearing or to properly object to the reference by the victim at trial to

9    the photo lineup identification; and (2) failing to request a *Donald* hearing at the

10   settlement conference. (Petition, Doc. 1 at 7.0  Respondents argue that the first part of

11   the claim is properly exhausted to the extent it was raised in Petitioner's first PCR

12   proceeding. (Answer, Doc. 16 at 20.)     Respondents argue that the second part,

13   concerning the *Donald* hearing, was never presented to the state courts and is now

14   procedurally defaulted. (*Id.* at 20-21.)

15   The undersigned agrees that the *Dessereault* portion of the claim was properly

16   exhausted.  Petitioner raised the claim in his first PCR petition. Petitioner cited the Sixth

17   Amendment, and various federal authorities, including *Strickland*, in support of his

18   ineffectiveness claims.  (Exhibit NN, PCR Pet. at 7.)   He specifically argued trial

19   counsel's failure to object to the victim's testimony about the identification.  (*Id.* at 11,

20   15.)  And, he specifically argued counsel's failure to move for a *Dessurealt* hearing.

21   (*Id.* at 15.)  In his Petition for Review to the Arizona Court of Appeals, Petitioner argued

22   that "counsel was ineffective for failing to file a pretrial motion for a *Dessurealt* Hearing

23   to see crucial identification procedure."  (Exhibit VV, Pet. Rev. at 3.)   (*See also id.* at

24   16.) He cited the 6th and 14th Amendments and *Strickland* in support of his claim. (*Id.*)

25   As for the failure to request a *Donald* hearing, the undersigned finds that

26   Petitioner did not fairly present such a claim to the Arizona Court of Appeals.   The

27   reference to a "*Donald* Hearing" apparently is intended to reference a hearing on the

28                                                18

record to demonstrate that the defendant understands the plea offer and makes a knowing and voluntary decision to reject it. *See e.g. Rivera-Longoria v. Slayton*, 225 Ariz. 572, 573, 242 P.3d 171, 172 (App. Div. 1 2010), *vacated on other grounds*, 228 Ariz. 156, 158, 264 P.3d 866, 868 (2011).[6]  The closest Petitioner came to raising such a claim was his general assertion that trial counsel "was ineffective at Settlement Conference for not adequately informing defendant whether to accept the plea or proceed to trial." (Exhibit VV, Pet. Rev. at 3.)  While related, these two claims are fundamentally separate – the one presented focused on counsel's advice to Petitioner, the one raised herein focuses on counsel's failure to have the court become involved in the advisements.

Petitioner's second PCR proceeding was limited to claims arising out of testimony about Petitioner's statements to the arresting officer.  Petitioner's direct appeal was limited to claims concerning the photo lineup and sentencing issues.

Accordingly, the undersigned finds that the portion of Ground Two related to the *Donald* Hearing was not fairly presented, and Petitioner's state remedies are now procedurally defaulted for the reasons discussed hereinabove.

**c.  Ground Three – Denial of Motion in Limine** – In Ground Three, Petitioner alleges that the trial court abused its discretion by allowing testimony concerning the photo lineup in violation of his Sixth and Fourteenth Amendment rights. (Petition, Doc. 1 at 8.)  Respondents apparently concede exhaustion, and address this issue on the merits in conjunction with the related claim in Ground One concerning the *Brady* violation associated with the photo lineup.  (Answer, Doc. 16 at 21.)

Indeed, Petitioner argued in his direct appeal that admission of the identification was "constitutionaly [sic] prejudicial error," and cited *Neil v. Biggers*, 409 U.S. 188

---

[6] The *Donald* court did not provide for such a hearing.  Rather, the only type of hearing anticipated in *Donald* was a hearing to establish, post-trial, counsel's ineffectiveness with regard to a proffered and rejected plea agreement.  *See Donald*, 198 Ariz. at 413, 10 P.3d at 1200. Nonetheless, the phrase "*Donald* hearing" appears to uniformly refer to a pre-trial hearing to confirm the desire to reject the plea. *See e.g. State v. Svanoe*, 2009 WL 5149956, 2 (Ariz.App. Div. 1, 2009); and *State v. Miramon*, 2009 WL 2581882, 2 (Ariz.App. Div. 2, 2009).  Its function appears to be primarily a defensive measure for defense counsel (to avoid a malpractice claim), and/or for the prosecution (to avoid a post-trial claim of ineffective assistance).

19

(1972), the leading federal case on the admissibility of identifications.  (Exhibit BB, Supp. Open. Brief at 12.)

Accordingly, the undersigned finds Petitioner's state remedies on this claim properly exhausted.

**d.  Ground Four – *Miranda* Violations** - In Ground Four, Petitioner alleges that his rights under *Miranda v. Arizona* were violated when the trail court failed to strike testimony that Petitioner refused to speak to the arresting officers.  (Petition, Doc. 1 at 9.)   Respondents argue that this claim was only raised in Petitioner's Second PCR proceeding and the claims were procedurally barred on adequate and independent state grounds.  (Answer, Doc. 16 at 21.)

Indeed, Petitioner argued to the PCR court in his second PCR proceeding that the trial court abused its discretion "for allowing jury to consider evidence on testimony provided by prosecutor's witness concerning defendant's 'right to remain silent' (Miranda rights)."  (Exhibit DDD at 4.)   Petitioner again raised this argument in his second PCR Petition for Review.  (Exhibit HHH at 8.)

The PCR court plainly rejected all of Petitioner's claims in his second PCR petition as untimely.

> Defendant cannot raise these claims in an untimely Rule 32 proceeding because an untimely notice may only raise claims pursuant to Rule 32.l(d), (e), (t), (g), or (h). Ariz. R. Crim. P. 32.4(a).
> A defendant must comply strictly with Rule 32 by asserting substantive grounds which bring him within the provisions of the Rule in order for the Court to grant relief. *State v. Manning*, 143 Ariz. 139, 141, 692 P.2d 318, 320 (1984). Defendant fails to state a claim for which relief can be granted in an untimely Rule 32 proceeding. Rule 32.4(a).

(Exhibit EEE, M.E. 9/26/11.)

Had the Arizona Court of Appeals adopted that reasoning, the procedural bar would be plain. However, the Arizona Court of Appeals granted review, and held – not that the claim was untimely – but that it was either not presented earlier or presented earlier.

20

> On review, Grant repeats several of his claims but does not address the trial court's conclusion that those claims are precluded. We find no error in the court's determination-Grant's claims could have been raised on appeal or in his first postconviction proceeding, or were raised in those proceedings and rejected. Thus, they are precluded pursuant to Rule 32.2(a).

(Exhibit SA-A, Mem. Dec. 5/30/13 at 2.)     The Arizona Court of Appeals failed to delineate which claims were raised, and those which were not.

A finding of preclusion, *i.e.* that the claims have been raised before, "does not provide a basis for federal courts to apply a procedural bar." *Ceja v. Stewar*t, 97 F.3d 1246, 1253 (9th Cir. 1996).[7]  Where an Arizona Court asserts both conditions apply to a group of claims without delineating which applied to which, it "did not clearly base its decision on independent and adequate state law grounds." *Id.  See also Calderon v. U.S. Dist. Court for Eastern Dist. of California (Bean)*, 96 F.3d 1126, 1131 (9th Cir. (Cal.) 1996); *Valerio v. Crawford*, 306 F.3d 742, 774-75 (9th Cir. (Nev.) 2002) ("By failing to specify which claims were barred for which reasons, the Nevada Supreme Court 'did not clearly and expressly rely on an independent and adequate state ground.'"); and *Koerner v. Grigas*, 328 F.3d 1039, 1053 (9th Cir.  (Nev.) 2003).  To avoid habeas review, a state court decision must "clearly and expressly rely on an independent and adequate state ground." *Coleman v. Thompson*, 501 U.S. 722, 735 (1991).

Respondents contend that this Court should look beyond the pronouncement of the Arizona Court of Appeals, to the decision of the PCR court and the procedural history, and conclude that the true decision was one that the claims had not been raised, were thereby waived, and thus procedurally barred on that ground.

Respondents acknowledge the rule that a procedural bar must be clearly and expressly applied, but assert that the application in these instances is "unwarranted"

---

[7] The Arizona courts often reference both its waiver bar (e.g. that the claims were not raised earlier, when they could have been) and its preclusion bar (*i.e.* that the claims actually were raised earlier and adjudicated on the merits) as resulting in the claims being "precluded".  This likely results from the pronouncement in Arizona Rule of Criminal Proceudre 32.2(a) that with both types, the "defendant shall be precluded from relief under this rule."

21

1    because there is no uncertainty in this case which rule the Arizona court was applying

2    (because the record purportedly shows that the claim actually not been raised

3    previously).

4         In *Cone v. Bell*, 556 U.S. 449 (2009), the Court was faced with a state appellate

5    decision which disposed of a federal claim on the mistaken basis that it had been

6    previously presented.  The record reflected that the claim had clearly not been presented

7    or passed on in any prior proceeding.  Nonetheless, the Supreme Court held:  "When a

8    state court declines to review the merits of a petitioner's claim on the ground that it has

9    done so already, it creates no bar to federal habeas review…When a state court refuses to

10   readjudicate a claim on the ground that it has been previously determined, the court's

11   decision does not indicate that the claim has been procedurally defaulted."  556 U.S. at

12   466-67.   The Court further rejected the state's request to treat the rejection as a

13   procedural bar based upon the state's waiver rule.  "Although we have an independent

14   duty to scrutinize the application of state rules that bar our review of federal claims, we

15   have no concomitant duty to apply state procedural bars where state courts have

16   themselves declined to do so. The Tennessee courts did not hold that Cone waived his

17   *Brady* claim, and we will not second-guess their judgment." 556 U.S. at 468-69.

18        Respondents contend that this Court should nonetheless rely upon the dissent in

19   *Koerner*, wherein Judge Beezer argued that the reference to an "ambiguous" order

20   "should be understood in light of the state court opinion and the record in that case,

21   rather than looking solely to the face of the state court's opinion." 328 F.3d 1039, 1056

22   (Beezer, J. dissenting).

23        However, Judge Beezer's dissent plainly acknowledged the import of the majority

24   decision in *Koerner*:

25            Today's opinion holds that a federal court may only look to the state
              court opinion at issue in determining whether a state court opinion
26            relies on a procedural default. If a state court opinion is ambiguous
              on its face, today's opinion makes it impossible to find a procedural
27            default because any such state court opinion does not "clearly and
              expressly rely on an independent and adequate state ground."

28

                                          22

*Valerio v. Crawford*, 306 F.3d 742, 773 (9th Cir.2002) (citation omitted).

*Koerner*, 328 F.3d at 1056 (Beezer, J. dissenting).  Thus the portion of Judge Beezer's dissent on which Respondents rely was not a statement of what the law in the Ninth Circuit is, but Judge Beezer's assertion of what it ought to be.  *But see McElyea v. Schriro*, 2009 WL 222375, CV-06-0884-PHX-SMM(HCE) (D. Ariz. 2009) (looking beyond state court opinion, based on pre-*Koerner* 9th Circuit cases doing so, citing *Koerner, but* without noting Beezer's dissent).  Respondents point to no authority permitting this Court to reject Judge Beezer's analysis of the majority's holding in Koerner, nor the effect of that holding.

Here, the opinion of the Arizona Court of Appeals is ambiguous on its face, proposing two mutually exclusive reasons for disposing of the claim. It's ambiguity is increased by the fact that the trial court had, in fact, not rejected the claim on either preclusion or waiver grounds, but on timeliness grounds.  (*See* Exhibit EEE, M.E. 9/26/11.)   According to *Koerner*, this Court is not free to look beyond that ambiguity and attempt to ascertain the true basis for disposing of the claim.

Thus, this Court may not find that the claim was procedurally barred on an independent and adequate state ground.

**e.  Summary Re Exhaustion** – Based upon the foregoing, the undersigned concludes that Petitioner has procedurally defaulted on: (1) the portion of Ground One based upon a failure to disclose the victim's prior description; and (2) the portion of Ground Two based upon the ineffective assistance of trial counsel in failing to request a *Donald* hearing at the settlement conference.

Also based on the foregoing, the undersigned concludes that Petitioner properly exhausted his remedies as to: (1) the portion of Ground One based upon the admitted photo-lineup; (2) the portion of Ground Two based upon the ineffective assistance of trial counsel in failing to request a *Dessurealt* hearing or to properly object to the reference by the victim at trial to the photo lineup identification; (3) all of Ground Three;

and (4) all of Ground Four.

## B.  CAUSE AND PREJUDICE

If the habeas petitioner has procedurally defaulted on a claim, or it has been procedurally barred on independent and adequate state grounds, he may not obtain federal habeas review of that claim absent a showing of "cause and prejudice" sufficient to excuse the default.  *Reed v. Ross*, 468 U.S. 1, 11 (1984).

"Cause" is the legitimate excuse for the default.  *Thomas v. Lewis*, 945 F.2d 1119, 1123 (1991). "Because of the wide variety of contexts in which a procedural default can occur, the Supreme Court 'has not given the term "cause" precise content.'" *Harmon v. Barton*, 894 F.2d 1268, 1274 (11th Cir. 1990) (quoting *Reed*, 468 U.S. at 13), *cert. denied*, 498 U.S. 832 (1990).  The Supreme Court has suggested, however, that cause should ordinarily turn on some objective factor external to petitioner, for instance:

> ... a showing that the factual or legal basis for a claim was not reasonably available to counsel, or that "some interference by officials", made compliance impracticable, would constitute cause under this standard.

*Murray v. Carrier*, 477 U.S. 478, 488 (1986) (citations omitted).

In his Supplemental Reply (Doc. 22), Petitioner argues that this Court should find cause to excuse his procedural defaults based on: (1) failures of the state courts to address his motions for rehearing, and the denial of his motions to consolidate; (2) the state ruling rejecting as waived his motion in limine claims were in error because the motion in limine preserved the claim; (3) his lack of access to legal materials and dependence on other inmates; and (4) that he has only recently discovered the case law on which his claims are based.

**State Court Procedural issues** –  Petitioner complains that the PCR court failed to respond to two motions for rehearing, resulting in a determination that his petition for review to the Arizona Court of Appeals was untimely.  (Supp. Reply, Doc. 22 at 4.)  It is true that the Arizona Court of Appeals summarily dismissed the petition for review as

24

untimely, prior to the PCR court's ruling on the motion for rehearing. (Exhibit UUU, Order 11/29/11.) However, upon issuance of the PCR court's order, the Court of Appeals reinstated the petition for review. (Exhibit KKK, Pet. Rev. at Attachment, Order 1/25/12; Exhibit VVV, Order 4/11/13.) Ultimately, on May 30, 2013, during the pendency of this proceeding, the Arizona Court of Appeals granted review but denied relief. (Exhibit SA-A, Order 5/30/13.) Petitioner proffers no explanation why this procedural quirk precluded him from fairly presenting his procedurally defaulted claims to the Arizona Court of Appeals. Perhaps, had the appellate court's timeliness ruling been left un-amended, there would have been some cause for complaint. The ruling did not stand, however, and Plaintiff's petition for review was ultimately heard, albeit unsuccessfully.

Petitioner also attempts to show cause by pointing to the denial of his Motion to Consolidate his second PCR proceeding with his still pending petition for review on his first PCR Proceeding. (See Petition, Doc. 1 at Attachment C7; Exhibit ZZ, Order 1/25/12.) However, Petitioner fails to show how this denial precluded him from properly exhausting his state remedies. Perhaps Petitioner believes that had the consolidation been granted, any claims rejected as waived in the first proceeding would have been subject to review on the merits. However, this fails to show cause for two reasons.

First, the claims found herein to be procedurally defaulted had been found defaulted in the first PCR proceeding as a result of Petitioner's failure to raise them on direct appeal. Consolidation of the two PCR proceedings would not have cured this defect.

Second, Petitioner fails to show any defect in the rejection of his motion to consolidate. Petitioner cannot simply point to a refusal of the state court to permit Petitioner to employ procedural sleight of hand to avoid procedural default as cause for procedural default. This is hardly the kind of "interference" referenced in *Murray*. Indeed, if such tactics were to work, any procedural default could be avoided by simply

asking the state court to ignore the default, no matter how baseless the justification for the request.

The undersigned finds no cause based on these rulings.

**Errors regarding Motion in Limine** – Next, Petitioner argues that the state ruling rejecting as waived his motion in limine claims were in error because the motion in limine preserved the claim.  However, only Ground Three was founded upon the denial of denial of Petitioner's motion in limine, and that claim has not been found to be procedurally defaulted.  Petitioner proffers no explanation how this argument relates to his procedurally defaulted claims.

**Lack of Legal Resources** – Petitioner complains that he lacks legal resources and is forced to rely upon other inmates for assistance, and that he has only recently discovered the case law on which his claims are based.  Here, however, Petitioner's two procedurally defaulted claims in Grounds One and Two were procedurally defaulted in either his direct appeal or his first PCR proceeding.  In both proceedings, Petitioner was represented by counsel.  Thus, he was not dependent upon his own resources to present his claims.  Therefore, any deficiencies in the resources available to Petitioner in prison would not show cause for his procedural defaults.

**Summary re Cause and Prejudice** – Based upon the foregoing, the undersigned concludes that Petitioner had failed to establish cause to excuse his procedural defaults.

Both "cause" and "prejudice" must be shown to excuse a procedural default, although a court need not examine the existence of prejudice if the petitioner fails to establish cause. *Engle v. Isaac*, 456 U.S. 107, 134 n. 43 (1982); *Thomas v. Lewis*, 945 F.2d 1119, 1123 n. 10 (9th Cir.1991).  Petitioner has filed to establish cause for his procedural default.  Accordingly, this Court need not examine the merits of Petitioner's claims or the purported "prejudice" to find an absence of cause and prejudice.

//

//

26

## C.  ACTUAL INNOCENCE AS CAUSE

The standard for "cause and prejudice" is one of discretion intended to be flexible and yielding to exceptional circumstances, to avoid a "miscarriage of justice." *Hughes v. Idaho State Board of Corrections*, 800 F.2d 905, 909 (9th Cir. 1986).   Accordingly, failure to establish cause may be excused "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986) (emphasis added).   Although not explicitly limited to actual innocence claims, the Supreme Court has not yet recognized a "miscarriage of justice" exception to exhaustion outside of actual innocence. *See* Hertz & Lieberman, *Federal Habeas Corpus Pract. & Proc.*, §26.4 at 1229, n. 6 (4th ed. 2002 Cumm. Supp.).   The Ninth Circuit has expressly limited it to claims of actual innocence. *Johnson v. Knowles*, 541 F.3d 933, 937 (9th Cir. 2008).

A petitioner asserting his actual innocence of the underlying crime must show "it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence" presented in his habeas petition. *Schlup v. Delo*, 513 U.S. 298, 327 (1995).  A showing that a reasonable doubt exists in the light of the new evidence is not sufficient.  Rather, the petitioner must show that no reasonable juror would have found the defendant guilty. *Id*. at 329.  This standard is referred to as the "Schlup gateway." *Gandarela v. Johnson*, 286 F.3d 1080, 1086 (9th Cir. 2002).

Here, Petitioner asserts:

> The Petitioner was told that there [were] groceries in the back of the vehicle, and if he could get them because Petitioner's daughter was visiting and had a birthday party.   The Petitioner just came from work and did not know or have reason to know said vehicle was stolen.

(Supp. Reply, Doc. 22 at 8.)   Petition proffers no support for his contention, and no details.  For example, he does not identify who asked him to get the groceries, or how they came to be in possession of the vehicle, nor does he show that this explanation was contemporaneously offered.  Moreover, Officer Strong's testimony was not merely that

1    Petitioner was found in the vicinity of the vehicle, but that he had observed Petitioner

2    driving the vehicle, and doing so in a suspicious manner.  (Exhibit M, R.T. 7/12/7 at 59-

3    61.)  Moreover, Petitioner proffers nothing to explain away the victim's identification of

4    him as the person who disappeared from the victim's home at the same time as the car

5    and its keys.  (*See* Exhibit M, R.T. 7/12/7 at 46-47.)

6         Petitioner fails to make a showing that no reasonable juror would have found him

7    guilty based on his explanation for his possession of the vehicle.   Accordingly his

8    procedurally defaulted claims must be dismissed.

9

10   **D.  STANDARDS FOR RELIEF**

11        **Standard Applicable on Habeas** - While the purpose of a federal habeas

12   proceeding is to search for violations of federal law, not every error justifies relief.

13        **Errors of Law** - "[A] federal habeas court may not issue the writ simply because

14   that court concludes in its independent judgment that the state-court decision applied [the

15   law] incorrectly." *Woodford v. Visciotti*, 537 U. S. 19, 24– 25 (2002) (per curiam).  To

16   justify habeas relief, a state court's decision must be "contrary to, or an unreasonable

17   application of, clearly established Federal law, as determined by the Supreme Court of

18   the United States" before relief may be granted.  28 U.S.C. §2254(d)(1).

19        **Errors of Fact** -  Federal courts are further authorized to grant habeas relief in

20   cases where the state-court decision "was based on an unreasonable determination of the

21   facts in light of the evidence presented in the State court proceeding."  28 U.S.C. §

22   2254(d)(2).  "Or, to put it conversely, a federal court may not second-guess a state court's

23   fact-finding process unless, after review of the state-court record, it determines that the

24   state court was not merely wrong, but actually unreasonable."  *Taylor v. Maddox*, 366

25   F.3d 992, 999 (9th Cir. 2004).

26        Moreover, a state prisoner is not free to attempt to retry his case in the federal

27   courts by presenting new evidence.   There is a well-established presumption of

28
                                              28

correctness of state court findings of fact.  This presumption has been codified at 28 U.S.C. § 2254(e)(1), which states that "a determination of a factual issue made by a State court shall be presumed to be correct" and the petitioner has the burden of proof to rebut the presumption by "clear and convincing evidence."

**Applicable Decisions** – In evaluating state court decisions, the federal habeas court looks through summary opinions to the last reasoned decision.  *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004).

**No Decision on the Merits** – The limitations of 28 U.S.C. § 2254(d) only apply where a claim has been "adjudicated on the merits in State court."  Thus, where a petitioner has raised a federal claim to the state courts, but they have not addressed it on its merits, then the federal habeas court must address the claim *de novo*, and the restrictive standards of review in § 2254(d) do not apply.  *Johnson v. Williams*, 133 S.Ct. 1088, 1091-92 (2013). *See id.* (adopting a rebuttable presumption that a federal claim rejected by a state court without being expressly addressed was adjudicated on the merits).

## E.  MERITS OF GROUND ONE: PHOTO-LINEUP

In his Ground One for relief, Petitioner argues that the prosecutor violated his due process rights under *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to timely disclose material facts of two purported lineups, the first conducted 3 months after the initial crime and the second conducted 6 months prior to trial.  (Petition, Doc. 1 at 6.)

With regard to the "first" lineup, Respondents argue that while the delay in disclosure may have been a violation of state rules, it was not a *Brady* violation because: (1) the material was not favorable to the defense, the victim having identified Petitioner as the thief; and (2) therefore any failure to timely disclose was harmless.  With regard to the "second" lineup, Respondents argue that the PCR court properly found that there had been no such lineup, and that Petitioner was merely misconstruing the victim's trial

29

testimony about the timing of the lineup.  (Answer, Doc. 16 at 26-28.)

Petitioner replies that prejudice accrued because the lineup was tainted, and thus affected the in-court identification by the victim.  He further argues that the lack of disclosure concerning the "first" lineup leaves open the question whether a second lineup occurred.  (Reply, Doc. 17 at 8-9.)

**State Court Decision** - The Arizona Court of Appeals summarized the factual background as follows:

> Before trial…Defendant also moved to preclude the victim's in-court identification of Defendant because the victim told police that he would be unable to identify the perpetrator. Defense counsel later learned that a photographic lineup had occurred but that the State had not disclosed it. Counsel moved to preclude all evidence of the lineup.
> At trial, the court held an evidentiary hearing regarding the victim's ability to identify Defendant. The court concluded from the victim's testimony that he could identify Defendant without reliance on the lineup.

(Exhibit CC, Mem. Dec. 9/2/08 at 2-3.)  The court rejected Petitioner's assertion that the line-up was tainted because Petitioner was not represented at the post-indictment lineup, finding that the lineup was not introduced, and the trial court properly found that there was a source independent of the lineup to support an in-court identification, *i.e.* the month long acquaintance between the victim and Petitioner.  (*Id.* at 4-5.)

However, the Arizona Court of Appeals did not further address the merits of Petitioner's *Brady* claim.

**Application of Law** - In *Brady v. Maryland*, the Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.  373 U.S. 83, 87 (1963).  Since *Brady*, the Court has held that the duty to disclose such evidence is applicable even though there has been no request by the accused.  *United States v. Agurs*, 427 U.S. 97, 107 (1976) (federal prosecution); *Strickler v. Greene*, 527 U.S. 263, 281 (1999) (applying *Agurs* to state prosecution).  They have also extended the duty to encompass impeachment evidence as

well as exculpatory evidence.  *United States v. Bagley*, 473 U.S. 667, 676 (1985).

However, it is only "material" evidence that triggers *Brady* protections.  Evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Bagley*, 473 U.S. at 682.  The difference to be shown need not be a different verdict or sentence, but a difference in the fairness of the trial such that the trial result is worthy of confidence. *Kyles v. Whitley*, 514 U.S. 419, 434 (1995).  Once a reviewing Court has found a failure to disclose "material evidence," no further harmless-error analysis is required.  *Id*. at 435.

"There are three components of a Brady claim: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory or because it is impeaching; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; and (3) prejudice must have ensued." Maxwell v. Roe, 628 F.3d 486, 509 (9th Cir.2010).

<u>Favorability</u> – Here, Petitioner fails to show that the undisclosed evidence was favorable.  The "first" lineup itself was not favorable, the witness having identified Petitioner as the perpetrator.  At best, Petitioner offers speculation that there was something amiss in the "first" lineup that might have tainted the in-court identification,[8] and speculation that the "second" lineup occurred and that it too was somehow improper. However, speculation will not support a *Brady* claim. Rather, Petitioner bears the burden of affirmatively establishing that the evidence would have been favorable.  *Runningeagle v. Ryan*, 686 F.3d 758, 769 (9th Cir. 2012).  Because Petitioner has not met the burden, this claim is without merit.

<u>Suppression</u> – Petitioner also bears the burden of establishing that the evidence was "suppressed."  However, Petitioner shows no favorable material which was not known to the defense in ample time to be used at trial.

_____

[8] The Arizona Court of Appeals noted the absence of defense counsel at the post-indictment photo lineup as an argument raised to them.  However, a defendant has no right to counsel at even a post-indictment photo lineup.  *See U.S. v. Ash*, 413 U.S. 300 (1973); and *State v. McDonald*, 111 Ariz. 159, 164, 526 P.2d 698, 703 (1974).

Petitioner complains that the disclosure of the "first" lineup was delayed.  "The Government's misconduct in failing to promptly disclose exculpatory evidence, however, does not automatically warrant reversal of a defendant's conviction."  *U.S. v. Miller*, 529 F.2d 1125, 1128 (9th Cir. 1976).  Where a disclosure is delayed, but comes in time to be fully used, no *Brady* violation has occurred. "To escape the *Brady* sanction, disclosure 'must be made at a time when disclosure would be of value to the accused.'" *U.S. v. Gordon*, 844 F.3d 1397, 1403 (9th Cir. 1988) (citations omitted).  At least five days prior to trial, Petitioner's counsel filed a Motion to Preclude (Exhibit H), seeking to exclude evidence of the photo lineup, indicating his awareness of the information at least by that date.  Petitioner points to no additional defense that could have been mounted had the disclosure been provided earlier.

As to the "second" lineup, Petitioner fails to show that the lineup occurred, and thus fails to show that it was "suppressed."   Petitioner bases his assumption of the existence of such a lineup upon the following testimony by the victim:

> Q When [the officer] specifically asked you if you could identify the suspect, you indicated no, correct?
> A I don't recall saying no.
> Q You didn't mention anything to the officer regarding this interaction that took place and someone going for a walk and whatnot, correct?
> A I don't recall if I said that or not.
> Q Okay. And yet today well over a year later now you're prepared to make an identification, correct?
> A I've already made one a few months back, maybe six months.

(Exhibit M, R.T. 7/12/07 at 43-44.)  Thus, the victim was recalling the identification as occurring sometime in January to May, 2007.  In seeking reconsideration on Petitioner's Motion to Preclude, the prosecution represented that the photo-lineup occurred "three months after the date of the alleged crime."  (Exhibit J, Motion to Reconsider at 2.)  The victim testified that the theft occurred on May 26, 2006.  (Exhibit M, R.T. 7/12/07 at 34.) Thus, according to the prosecution, the photo-lineup was conducted around late August, 2006, some 4 months sooner than the victim's estimation.

32

The PCR court rejected Petitioner's claim about the "second" lineup, finding:

> The defendant's third claim of prosecutorial misconduct is that there was a second identification procedure never disclosed by the State. Defendant has presented no evidence of such an identification procedure, but rather infers the existence of such an identification procedure from the victim's testimony. However, after reviewing the record, the Court finds that it does not support defendant's inference. The victim was clearly referring to the first, suppressed lineup during his testimony. (R.T. of July 12, 2007, at 44).

(Exhibit SS, M.E. 1/28/10 at 2.)   While the undersigned might not characterize the victim's testimony as "clearly" referring to the "first" lineup, the undersigned cannot find that the testimony supports a finding that a second lineup was conducted.  All of the testimony and briefs in the case reference a single lineup, not two.  The victim was plainly uncertain about the time period, alternately referring to it as a "few" and "maybe six" months previously.  Thus, the undersigned finds that Petitioner has failed to meet his burden of showing that a "second" photo lineup was conducted.  Necessarily, the undersigned finds that no such lineup was suppressed.

Even if this Court were inclined to Petitioner's interpretation of the testimony, the undersigned cannot say that the state court's determination was unreasonable "in light of the evidence presented in the State court proceeding."   28 U.S.C. § 2254(d)(2). Moreover, that factual determination is entitled to a presumption of correctness, and Petitioner has not proffered "clear and convincing evidence" to overcome it.  28 U.S.C. § 2254(e)(1).

Having concluded that the second lineup did not occur, this Court must conclude that no material evidence concerning it was suppressed by the prosecution in violation of *Brady*.

Prejudice – Petitioner fails to proffer anything to support a finding of prejudice from any purported suppression.   The "first" lineup was disclosed, and Petitioner proffers no explanation for any prejudice from any delay.  Similarly, Petitioner proffers nothing about the purported "second" lineup to show that had he known of its existence the results of the proceeding would have been different.

As noted by the Arizona Court of Appeals, the photo lineup itself was never introduced in evidence. (Exhibit CC, Mem. Dec. 9/2/08 at 4.)   Although, the victim did make his oblique reference to having made an identification previously, the reference was a single sentence, without elaboration, and even without indication that it was a lineup identification.  (Exhibit M, R.T. 7/12/07 at 44.)

Petitioner argues that the lineup had somehow tainted the victim's in court identification.  However, as recognized by the Arizona Court of Appeals, even if there was some impropriety in the pre-trial lineup, the in-court identification may stand if the court is convinced based upon the circumstances that the in-court identification is nonetheless reliable. (*See* Exhibit CC, Mem. Dec. 9/2/08 at 4-5.) *See Neil v. Biggers,* 409 U.S. 188 (1972).  For example, here, the victim was familiar with the perpetrator, having been with him for several hours on several occasions over the course of a month, twice in the victim's home. (*See* Exhibit M, R.T. 7/12/07 at 30-31.) Thus, any defect in the photo lineup would not have had the same impact as, for example, an identification of an unknown perpetrator who was encountered only at the time of the crime.  *See U.S. v. Crozier*, 259 F.3d 503, 511, n. 2 (6th Cir. 2001) ("In determining whether an identification was reliable, it is material whether the witness was familiar with the defendant, because the more familiar the person, the more reliable the identification."). Most importantly, Petitioner proffers nothing to show that a sooner disclosure of the "first" photo-lineup would have altered the conclusion that the in-court identification was admissible.[9]

Further, the prosecution's case did not stand alone on the victim's identification, but also upon Petitioner's possession (and driving) of the vehicle and the keys taken from the victim. Petitioner's proffered explanation for his possession was wholly

_____

[9] To show that the in court identification was unreliable, Petitioner points to evidence that the victim originally told police he would be unable to identify the perpetrator, and gave a description of the perpetrator that did not match Petitioner.  Such arguments are directed at the state court's decision to permit the in-court identification in the face of the photo lineup, but are unrelated to the conduct of the photo lineup and do not establish prejudice from any "suppression" (*i.e.* delayed disclosure) of the photo-lineup, the issue relevant to Petitioner's *Brady* claim.

unsupported.  *See e.g. State v. Valencia*, 2 Ariz. App. 301, 408 P.2d 234 (App. 1965) (although possession of stolen goods alone is insufficient, failure to adequately explain possession of stolen goods may be evidence of guilt).    Thus, there is no reason to believe that a sooner disclosure might have resulted in an acquittal.

Thus, not only has Petitioner failed to show the suppression of favorable evidence, but also any prejudice resulting therefrom.

Accordingly, the properly exhausted portion of Petitioner's Ground One is without merit and must be denied.

## F.  MERITS OF GROUND TWO: *DESSEREAULT HEARING*

For the properly exhausted portions of Ground Two, Petitioner argues that trial counsel was ineffective for failing to request a *Dessurealt* hearing or to properly object to the reference by the victim at trial to the photo lineup identification.  (Petition, Doc. 1 at 7.)

In *State v. Dessureault*, 104 Ariz. 380, 384, 452 P.2d 951, 955 (1969), the Arizona Supreme Court laid out the process for evaluating challenges to identification procedures:

> First, if at the trial the proposed in-court identification is challenged, the trial judge must immediately hold a hearing in the absence of the jury to determine from clear and convincing evidence whether it contained unduly suggestive circumstances. In this the burden is on the prosecution to establish from all the circumstances surrounding the pretrial identification that it was not such as to be unduly suggestive.
> Second, if trial judge concludes that the circumstances of the pretrial identification were unduly suggestive or that the prosecution has failed to establish by clear and convincing evidence that they were not, then it is the prosecution's burden to satisfy the trial judge from clear and convincing evidence that the proposed in-court identification is not tainted by the prior identification.

*Dessureault*, 104 Ariz. at 384, 453 P.2d 951, 955 (Ariz. 1969).

Respondents argue this claim is without merit because: (1) counsel had already undertaken substantial efforts to prevent the victim from identifying Petitioner; (2) the

35

victim's reference to the lineup was a single, unsolicited, unexpected reference, and counsel could have reasonably concluded to minimize the impact by not objecting; (3) given the other evidence against Petitioner, there was no prejudice.  (Answer, Doc. 16 at -35.)

Petitioner replies that the identification was a crucial issue, the lineup serving "to crystallize the witnesses' identification of the defendant."  (Reply, Doc. 17 at 10-11.)

**State Court Decision** – The PCR court denied, this claim, finding: (1) that a *Dessureault* hearing had been conducted; and (2) an objection to the testimony would have highlighted the testimony, and thus not doing so was sound trial strategy.  (Exhibit SS, M.E. 1/28/10 at 3.) The PCR court further found that Petitioner failed to show prejudice because of the other evidence connecting Petitioner with the crime, e.g. the victim's in-court identification, and Petitioner's possession of the missing car and keys. (*Id.*)

**Standard for Ineffective Assistance Claims** – Generally, claims of ineffective assistance of counsel are analyzed pursuant to *Strickland v. Washington*, 466 U.S. 668 (1984).  In order to prevail on such a claim, petitioner must show:  (1) deficient performance - counsel's representation fell below the objective standard for reasonableness; and (2) prejudice - there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id*. at 687 88, 694.  Although the petitioner must prove both elements, a court may reject his claim upon finding either that counsel's performance was reasonable or that the claimed error was not prejudicial.  *Id*. at 697.

In determining whether counsel performed deficiently, the court must focus on whether the attorney's actions were appropriate under the circumstances existing at the time.  *See Strickland*, 466 U.S. at 690. Moreover, there is a strong presumption counsel's conduct falls within the wide range of reasonable professional assistance and that, under the circumstances, the challenged action might be considered sound trial strategy.

36

*United States v. Quinterro-Barraza*, 78 F.3d 1344, 1348 (9th Cir. 1995). The court should "presume that the attorneys made reasonable judgments and decline to second guess strategic choices." *United States v. Pregler*, 233 F.3d 1005, 1009 (7th Cir. 2000).

To establish prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

**No Deficient Performance** – Petitioner complains counsel did not do enough to keep out references to the photo lineup, and to preclude the in-court identification.

Pretrial Failings - Prior to trial, counsel obtained a ruling that evidence of the photo lineup identification would not be allowed due to the delayed disclosure. (Exhibit K, R.T. 7/11/07 at 7.)  The trial court ruled:

> IT IS ORDERED [the motion in limine regarding] identification of Defendant in court by victim is denied, but allowed if given by independent means of prior meeting and not photo lineup.

(Exhibit L, M.E. 7/11/07 at 2.)

Moreover, as noted by the PCR court, the trial court "did conduct a pretrial hearing regarding the victim's in-court identification of the defendant." (Exhibit SS, M.E. 1/28/10 at 3 (citing R.T. 7/11/07 at 52-57).)   At the hearing, the victim was examined as to his familiarity with the perpetrator, his present ability to identify him, the lack of affirmation by officers of his selection at the photo-lineup.  (Exhibit K, R.T. 7/11/7 at 52-55.)  The victim was cross-examined by defense counsel as to the nature of his relationship with the perpetrator, and the police report's indication that he had said he would be unable to identify the perpetrator.  (*Id.* at 55-56.)  The trial court opined:

> THE COURT:  Thank you.  Based on the testimony provided by Mr. Stewart, I do find that there is a basis for an in-court identification, if the witness is able to do so, and I'm going to allow him to proceed.
> So the Court will proceed under the premise that there is a basis, based on Mr. Stewart's testimony, for him to make an independent identification of the individual.

1
2
3

> If he is able to make the identification in court, then I'm going to allow it to proceed under that basis.  The Court is persuaded that he has had sufficient contact with the individual.
>
> That he had three different occurrences or 3 different occasions to be with the defendant.  That that would have created a sufficient basis for the identification to take place.

4  (*Id.* at 56-57.)

5       Petitioner points to nothing else trial counsel could have done under *Dessureault*

6  to challenge the in-court identification.

7       Moreover, Petitioner fails to establish that the photo lineup was unduly

8  suggestive.  Therefore, he cannot show that counsel would have been successful in

9  keeping out either the photo lineup or the in-court identification.  "If we find that a

10  challenged procedure is not impermissibly suggestive, our inquiry into the due process

11  claim ends."  *U.S. v. Bagley*, 772 F.2d 482, 492 (9th Cir. 1985).  It is only after finding it

12  unduly suggestive, that the court is required to consider the *Biggers* factors to determine

13  if an in-court identification should also be excluded.  *Id.  See also State v. Taylor*, 27

14  Ariz. App. 330, 333, 554 P.2d 926, 929 (Ariz. App. 1976).

15       "The failure to raise a meritless legal argument does not constitute ineffective

16  assistance of counsel."  *Baumann v. United States*, 692 F.2d 565, 572 (9th Cir. 1982).

17  Because Petitioner bears the burden of proof, this Court must conclude that any further

18  action by counsel to preclude the photo lineup or in-court identification on due process

19  grounds would have been futile, and thus was not deficient performance.

20       <u>Violation of Order</u> – It is true that the trial court precluded any evidence of the

21  photo lineup, and when the victim testified about his prior identification, counsel did not

22  object.

23       Having already obtained a definitive ruling on the motion in limine, trial counsel

24  was not required to interpose an objection to preserve the issue of any violation of that

25  order for appeal.  Ariz. R. Evid. 103(b).  *Cf.* Fed.R.Evid. 103(b).  Accordingly, insofar as

26  any objection might have been founded upon the previously granted motion under

27  *Brady*, no renewed objection was necessary for appeal. In contrast, any objection

28

founded upon the suggestiveness of the photo lineup had not been previously addressed, and would have had to have been raised by counsel.

However, the testimony was given on cross-examination by defense counsel, was uninvited, and any objection would have been after-the-fact.  Defense counsel and the trial court immediately took pains to caution the witness to respond to the questions asked.

> A  I've already made one a few months back, maybe six months.
> Q  Excuse me, if I could just --
> THE COURT: Yes. I'm going to ask you if you would please respond to the question asked of you if you would, sir, thank you.

(Exhibit M, R.T. 7/12/07 at 44.)   The only thing more defense counsel could have done would have been to either move for an order striking the testimony and directing the jury to disregard it, or for a mistrial.  *See e.g. State v. Lamar,* 205 Ariz. 431, 439, 72 P.3d 831, 839 (2003).  But such is not always the most tactically favorable approach, since it can serve to highlight testimony that might otherwise be inconsequential to the jury.

> An attorney's failure to object to the admission of inadmissible evidence is not necessarily ineffective…A defendant seeking to prove ineffective assistance of counsel "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"…Under the circumstances of [the] case, an effective advocate could have reasonably decided not to object…We need not determine the actual explanation for trial counsel's failure to object, so long as his failure to do so falls within the range of reasonable representation.

*Morris v. State of Cal.*, 966 F.2d 448, 456 (9th Cir. 1991).  Indeed, the state court concluded that it could have been a reasonable trial tactic for Petitioner's counsel to leave the matter alone.  Petitioner points to nothing to counter this conclusion.

Moreover, as discussed hereinafter, a motion for a mistrial would have been futile, given the lack of a probability that the testimony influenced the jury.

**No Prejudice** – The PCR court also concluded that Petitioner failed to show prejudice from any deficiencies in counsel's performance, given the combination of the victim's identification and Petitioner's possession of the stolen vehicle and keys.

39

With regard to the reference by the victim to the photo lineup, the undersigned agrees that there is not a reasonable probability that the outcome of the proceeding would have been different had counsel challenged the statement. The trial court could have either stricken the testimony or declared a mistrial.  Given the other evidence at trial, striking this oblique reference would not likely have impacted the jury's decision.  For the same reason, while a mistrial may have ultimately resulted in a dismissal or acquittal at a new trial, there is nothing to suggest a likelihood that one would have been granted. "The trial court must consider two factors in determining whether to grant a motion for a mistrial based on a witness's testimony: (1) whether the testimony called to the jurors' attention matters that they would not be justified in considering in reaching their verdict and (2) the probability under the circumstances of the case that the testimony influenced the jurors." *State v. Lamar*, 205 Ariz. 431, 439, 72 P.3d 831, 839 (2003).  For the reasons discussed hereinabove, the undersigned cannot find a probability that the mention of the prior identification influenced the jury.  Thus, the undersigned concludes that an order striking would have been ineffective to change the verdict, and a mistrial would not have been granted.

With regard to the exclusion of the in-court identification, the undersigned is troubled by what seems to be an eliding over the necessity of the identification to the conviction. Had counsel successfully challenged the in-court identification, there appears to be at least a reasonable probability that a conviction would not have been possible. *See e.g. State v. Valencia*, 2 Ariz. App. 301, 408 P.2d 234 (App. 1965) (possession of stolen goods alone is insufficient to convict for theft).  However, that assumes that further challenge would have been successful.  As discussed above, Petitioner fails to show that further action by counsel had any likelihood of succeeding, where his existing efforts had failed.

**Conclusion re Ineffective Assistance** – Petitioner has failed to show deficient performance, and has failed to show resulting prejudice.  Therefore, this Court must

1   conclude that his Ground Two is without merit, and it must be denied.

2

3   **G. MERITS OF GROUND THREE: TESTIMONY RE LINEUP**

4   In his Ground Three, Petitioner turns his attentions from the actions of counsel to

5   those of the trial court, and argues that the trial court abused its discretion in allowing the

6   victim to testify about the photo lineup, after previously ruling to exclude such

7   testimony. (Petition, Doc. 1 at 8.)

8   Respondents argue that: (1) Petitioner fails to show that any such abuse of

9   discretion amounted to a violation of Petitioner's rights under the Fourteenth or Sixth

10  Amendments; (2) no prejudice resulted because of the overwhelming evidence from the

11  in-court identification; (3) Petitioner fails to show that the photo lineup was suggestive,

12  and it was only excluded based upon the late disclosure; and (4) Petitioner had no right

13  to have counsel present at the photo lineup. (Answer, Doc. 16 at 35-37.)

14  Petitioner replies that: (1) the trial court originally ruled that any identification

15  was tainted by the photo lineup; (2) the victim's identification was flawed because it was

16  based on a presumption that the victim's visitor took the vehicle, the victim's description

17  of the weight did not match Petitioner, the visitor had a different name, he denied having

18  additional identifying information and denied an ability to identify the perpetrator; (3)

19  the trial court prevented defense counsel from objecting when the testimony about the

20  photo lineup occurred. (Reply, Doc. 17 at 11-13.)

21  **State Court Decision** – The Arizona Court of Appeals ruled that no constitutional

22  violation or denial of a fair trial had occurred with regard to the photo lineup because the

23  "jury never learned that a lineup had taken place." (Exhibit CC, Mem. Dec. 9/2/08 at 4.)

24  **Analysis** – Here, the trial court granted Petitioner's motion in limine on the

25  testimony about the photo lineup. Thus, Petitioner's present claim necessarily turns to

26  the trial court's actions once the oblique reference to the lineup occurred at trial.

27  No Objection - Petitioner, in essence, argues that the trial court should have acted

28

upon the victim's reference to the lineup.  However, the trial court had no objection to
rule upon. After the victim referenced the prior identification, counsel spoke, but made
no objection.

> Q [by Defense counsel] Excuse me, if I could just --
> THE COURT: Yes. I'm going to ask you if you would
> please respond to the question asked of you if you would, sir, thank
> you.

(Exhibit M, R.T. 7/12/7 at 44.)

Petitioner counters that the court interrupted counsel and prevented an objection.
It is true that the trial court interjected.  However, there is nothing in the record to
indicate that counsel was prevented from then asserting any objection.  Rather, the trial
court properly acted to cutoff further offending testimony by the victim. *See e.g.*
Ariz.R.Evid. 103(d) ("To the extent practicable, the court must conduct a jury trial so
that inadmissible evidence is not suggested to the jury by any means.")  *See also* Fed. R.
Evid. 103(d) (same).   The trial court did not, however prevent objections or motions
founded upon the testimony which had already occurred.  Following the trial court's
comments, counsel could have moved to strike the comments or for a mistrial.[10]

*Sua Sponte* Action not Required - Perhaps, Petitioner believes that the trial court
should have acted *sua sponte* to strike the offending testimony or to declare a mistrial.
Petitioner points to no authority for such a proposition, and the undersigned knows of
none.  *See* 75 Am. Jur.2d Trial § 384 (2013) ("Furthermore, a trial court does not err by
failing to strike or exclude testimony subject to eradication in the absence of a request
therefore by the defendant."); and 88 C.J.S. Trial § 250 ("ordinarily it is the better and
safer practice for the court to defer action on the admission or rejection of evidence until
a proper objection is made by the party interested in having the evidence excluded").
Indeed, such action may have been improper to the extent it was founded upon the *Brady*
ruling.  *See e.g. Vachon v. Pugliese*, 931 P.2d 371, 381 (Alaska 1996) ("A judge should

---

[10] That is not to suggest that counsel should have done so, merely that the trial court did
not preclude it.

42

not intervene if the evidence is reliable and valuable and is only inadmissible due to technical exclusionary rules or a privilege protection.") (citing 1 John W. Strong, *McCormick on Evidence* § 55, at 224 (4th ed. 1992)).

<u>Suggestiveness Not Shown</u> – To the extent that Petitioner's theory is founded upon the argument that the photo lineup was unduly suggestive, Petitioner fails to support his thesis.

Petitioner points to a number of factors in support of his argument, *e.g.* questions about the certainty of the witness's identification based on prior mismatched descriptions and disclaimers of ability to identify the visitor and the assumption that the visitor was the perpetrator.  Each of these things indicate that the victim's identification may have been unreliable.   But due process does not prevent the introduction of lineup identifications just because they may be unreliable.   Such issues are adequately dealt with by cross-examination.   Rather, due process is only concerned with the unduly suggestive lineup.   *See U.S. v. Bagley*, 772 F.2d 482, 492 (9th Cir. 1985) (discussed *supra*).

In *Simmons v. U.S.*, 390 U.s 3777 (1968), the Court identified some of types of suggestive procedures which increase the likelihood of a misidentification and thus give rise to due process concerns:

> This danger will be increased if the police display to the witness only the picture of a single individual who generally resembles the person he saw, or if they show him the pictures of several persons among which the photograph of a single such individual recurs or is in some way emphasized. The chance of misidentification is also heightened if the police indicate to the witness that they have other evidence that one of the persons pictured committed the crime.

390 U.S.at 383.  Petitioner points to no such defects in this case.

Thus, even had the trial court had a duty to *sua sponte* act when the witness obliquely referred to the photo lineup, Petitioner has not show that the trial court could have concluded that the testimony would have resulted in a due process violation as unduly suggestive.

*Brady* Violation Not Shown - Moreover, as discussed *supra*, Petitioner has failed to show that the delayed disclosure resulted in a *Brady* violation because Petitioner cannot show that the photo lineup information was favorable or that it had been suppressed to a point that it hindered the defense. Thus, the trial court could not have found constitutional error in the admission on that basis.

Rules Violation Not Cognizable – The only basis under which the admission of the testimony was erroneous was the extent to which it flowed from a violation of the Arizona disclosure rules or the order of the trial court. Neither of those bases are cognizable on federal habeas review. A state prisoner is entitled to habeas relief under 28 U.S.C. § 2254 only if he is held in custody in violation of the Constitution, laws or treaties of the United States. Federal habeas relief is not available for alleged errors in the interpretation or application of state law. *Estelle v. McGuire*, 502 U.S. 62 (1991).

**Conclusion** – Petitioner fails to show that the trial court's failure to *sua sponte* strike the victim's oblique reference to the photo lineup, or to declare a mistrial based upon the reference, amounted to a constitutional violation. Accordingly, Ground Three must be denied as without merit.

# H.  MERITS OF GROUND FOUR:  *MIRANDA* VIOLATION

For Ground Four of his Petition, Petitioner argues that his right to remain silent was violated when the trial court permitted testimony about Petitioner's provision of a false name to the arresting officer and his silence. (Petition, Doc. 1 at 9.)

**Factual Background** - Prior to trial Petitioner argued:

> When Mr. Grant was arrested, he refused to give his name and invoked his right to not incriminate himself. At one point the Officer alleges he gave an alternative name. Mr. Grant is not charge[d] with providing false information to an Officer, a crime, so any reference to this would be incredibly prejudicial and unfair. After being read his Miranda rights, Mr. Grant further refused to provide information to Officers and any comment from the State or any of the witnesses regarding Mr. Grant's refusal to provide any information goes directly against his constitutional rights.

44

(Exhibit E, Mot.in Lim. at 2.)  At the hearing on the motion, the defense avowed to the Court that Petitioner had provided a false name and declined to provide his true name because he believed he had an arrest warrant outstanding, and so believed his name would serve to incriminate him.

The trial court ruled that the prosecution could not introduce evidence on the refusal to provide a name, provision of a false name, or invocation of the right to remain silent.  (Exhibit K, R.T. 7/11/7 at 17-18.)  In discussing the provision of a false name, the trial court did not rely upon any Fifth Amendment grounds, but on a hearsay exclusion. The court originally concluded that the evidence was admissible under Arizona Rule of Evidence 803(3) permitting testimony of the declarant's "then-existing state of mind". The court alternated on whether it would permit the false name evidence:

> THE COURT:   I think it goes to existing mental state. I'm going to allow it in. I'm going to amend my previous order that the State is allowed to ask the police officer what happened when they asked Mr. Grant to identify himself.
> I will allow that in. I think it is exception under 8033. I think it goes to existing mental state.

(Exhibit K, R.T. 7/11/7 at 7.)  Eventually, however, the defense represented that the false name was provided because of fear of prosecution on an outstanding warrant.  The trial court then again reversed its ruling.

> THE COURT: He thought he had an outstanding warrant against him?
> MS. DE LA TORRE: He did, Your Honor.
> THE COURT: I think that changes my ruling. I think.
> MS. CORASINITI: I think, Your Honor, the State can agree not to have any speculation why did he give a false name.
> THE COURT: Not even going to bring up the fact he gave a name. He can talk about the police. Can talk about his behavior, his demeanor. They cannot go into the fact that he gave a false name. A different name to the police.
> Not going to allow it based on the avowal that counsel has just stated on the record.
> If he was concerned that there was an outstanding warrant and that might compromise his status on that outstanding warrant, that's reasonable to preclude it.

(Exhibit K, R.T. 7/11/7 at 17.)

At trial, on direct examination by the prosecution, the arresting officer testified, in

45

pertinent part, as follows:

> Q  Now, during this incident, do you recall what the defendant's demeanor was?
> A   It wasn't he happy. He was very beligerent [sic] at times. For the first 20 minutes in the back the car, he wouldn't say anything, wouldn't tell me his name.
> Q  How about -- one moment, Your Honor, please.  When you first met up with, you said he was unhappy?
> A  After I put him in handcuffs and told him he was driving a stolen car, and put him in the back of the police car, he became very beligerent [sic] and yelling. And I asked his name several times, he wouldn't look at me or answer my questions.

(Exhibit M, R.T. 7/12/7 at 70.)    Thus, the officer plainly testified about Petitioner's silence, in addition to testifying about Petitioner's demeanor.

At closing, however, the prosecution limited itself in its chief argument to asserting Petitioner's statements (other than giving a false name).  (*See*Exhibit O, R.T. 7/19/7 at 32-33.)  The prosecution limited itself on rebuttal to Petitioner's demeanor:

> There is some testimony also in defense counsel's closing that Mr. Grant he did comply, he didn't run from the police, he got on the ground even though the pavement was hot, but you also heard Officer Strong testify that Mr. Grant was quite belligerent. His demeanor was very uncooperative. He had attitude toward the officer and he swore at them several times.
> And you were just told that Officer Strong didn't do any further investigation, it was case closed, done, defendant is guilty. Well, keep in mind it's very difficult to conduct an investigation when the person you're trying to speak to is very rude towards you, is uncooperative toward you, is belligerent and just swears [at] you. It's hard to get anywhere when that happens. It doesn't mean that investigation was not conducted.

(Exhibit O, R.T. 7/19/7 at 43.)

**<u>Parties' Arguments</u>** - Respondents argue: "During trial, the State…did not once comment on Petitioner's invocation of his right to remain silent or mention the fact that Petitioner gave a false name."  (Supp. Answer, Doc. 26 at 7.)  Respondents argue that Petitioner's belligerent and uncooperative demeanor was properly testified to, and argued to the jury.  Further, Respondents argue that in any event no constitutional violation occurred because Petitioner did not effectively invoke his right to remain silent, and was, in fact, not silent.  Finally, Respondents argue that Petitioner has failed to show

46

that any error had a substantial and injurious effect on the verdict.  (Supp. Answer, Doc. 26.)

Petitioner replies that the state courts failed to rule on the merits of his *Miranda* claim, and the prosecution had been precluded from presenting evidence that Petitioner provided an "alternative name to police when they first initiated contact with him." (Supp. Reply, Doc. 28 at 22-23.)  Petitioner argues that prejudice resulted from all the various errors in the trial.  (*Id. et seq.*)

**State Court Ruling** – The trial court ruled that the prosecution could not introduce evidence on the refusal to provide a name, provision of a false name, or invocation of the right to remain silent.  (Exhibit K, R.T. 7/11/7 at 17-18.)

However, as discussed hereinabove, the parties have pointed to no subsequent state court decision addressing the merits of this claim, despite the alternative ruling by the Arizona Court of Appeals that the claim had been raised.

**Application of Law** – Although Petitioner engages in far ranging attacks on the admissibility of various testimony arising out of the events at his arrest, his claim in Ground Four is based upon the purported violation of his right to remain silent with regards to his refusal to provide a name and provision of a false name.

"The Fifth Amendment provides that '[n]o person... shall be compelled in any criminal case to be a witness against himself.' This right to remain silent carries an 'implicit...assurance' that silence will carry no penalty… Moreover, the government may not burden that right by commenting on the defendant's post-arrest silence at trial." *U.S. v. Velarde-Gomez*, 269 F.3d 1023, 1028-29 (9th Cir. 2001).   "Miranda gives the defendant a right to choose between speech and silence."  *Connecticut v. Barrett*, 479 U.S. 523, 529 (1987).  When a defendant choses to remain silent, that silence may not be used against him.

Lies Are Not Silence – Petitioner makes repeated references to improper use of his having given a false name.  The Ninth Circuit has rejected attempts to equate

1    falsehoods as silence.  In *Leavitt v. Arave*, 383 F.3d 809 (9th Cir. 2004), the defendant

2    asserted Fifth Amendment challenges to the admission of his pre-trial statements to

3    investigators in which he attempted to explain away various evidence against him.  He

4    argued the statements were tantamount to silence.  The court concluded that the

5    defendant was "confusing true silence with lies" and that "talking is not silence."  *Id.* at

6    827.

7         Here, Petitioner is similarly confusing lies with silence.  In providing a false

8    name, he was not silent.  Thus, even had the prosecution inserted testimony or argument

9    about provision of a false name, this Court could not conclude that it resulted in a Fifth

10   Amendment violation.[11]

11        More importantly, Petitioner fails to show any reference at trial to his having

12   given a false name.  The undersigned has not been able to find any.

13        <u>Demeanor Is Not Silence; Silence is not Demeanor</u> – To the extent that Petitioner

14   intends to complain that the prosecution improperly introduced evidence about his

15   demeanor or physical actions, his claim is without merit.  "The Supreme Court has

16   distinguished 'physical' and 'demeanor' evidence from 'testimonial' evidence, holding

17   that evidence of the former does not engender Fifth Amendment protection."  *U.S. v.*

18   *Velarde-Gomez*, 269 F.3d 1023, 1030 (9th Cir. 2001) (quoting *Pennsylvania v. Muniz*,

19   496 U.S. 582, 592 (1990)).

20        Here, the prosecution introduced testimony of the arresting officer that Petitioner

21   was "very beligerant [sic] and yelling." (Exhibit M, R.T. 7/12/7 at 70.)   Such testimony

22   is not affected by the Fifth Amendment.

23        On the other hand, where the demeanor evidence is simply a failure to react, then

24   it is tantamount to silence and may not be used.  *Id.* at 1031.  "Whether the government

25   argues that a defendant remained silent or describes the defendant's state of silence, the

26

27   ―――――――――――――――
     [11] Perhaps the introduction of such evidence would have, as determined by the
     trial court, amounted to impermissible hearsay.  But Petitioner does not raise such a
28   claim.

practical effect is the same—the defendant's right to remain silent is used against him at trial." *Id.* at 1032.

Here the arresting officer also testified that Petitioner "wouldn't say anything, wouldn't tell me his name…he wouldn't look at me or answer my questions." (Exhibit M, R.T. 7/12/7 at 70.)   This was plainly not demeanor testimony, but the use of Petitioner's silence.

Petitioner Not Wholly Silent – Respondents argue that Petitioner was not entitled to the protections of the Fifth Amendment because he did not remain silent, but continued to communicate with the officer on various issues.  However, "[a] defendant may selectively waive his *Miranda* rights by agreeing to answer some questions but not others." *U.S. v. Soliz*, 129 F.3d 499, 503 (9th Cir. 1997) (overruled on other grounds in *U.S. v. Johnson*, 256 F.3d 895 (9th Cir. 2001)).[12]

Invocation of Right – Respondents argue that Petitioner is not entitled to Fifth Amendment protection because he did not expressly invoke his right to remain silent. There is no testimony of record (as opposed to argument) reflecting such an invocation. There was, however, at least a presumption by the trial court that Petitioner did, at some point during his arrest, invoke his right to remain silent.

> THE COURT: ….And I'm not going to allow the officer to testify regarding what information was relayed to him or, again, that he invoked his right to remain silent.

(Exhibit K, R.T. 7/11/7 at 17-18.) It is, however, unclear when that invocation occurred, or whether it was express or just Petitioner's failure to answer.

---

[12] Of course, where Petitioner did respond, the admissibility of those statements depended upon their timing, *i.e.* were they pre-*Miranda* or post-*Miranda,* and were they pre-invocation or post-invocation. *See Missouri v. Seibert*, 542 U.S. 600, 608 (2004) ("*Miranda* conditioned the admissibility at trial of any custodial confession on warning a suspect of his rights: failure to give the prescribed warnings and obtain a waiver of rights before custodial questioning generally requires exclusion of any statements obtained"). Petitioner offers nothing to show that any of his statements were pre-*Miranda* or post-invocation.  (The record reflects that Petitioner was placed under arrest prior to any of his statements to police.  (*See* Exhibit M, R.T. 7/12/7 at 68-70.)  Accordingly, none of his statements were pre-custodial.)

49

1    In *Salinas v. Texas*, 133 S.Ct. 2174, 2182 (2013), the Court[13] recently held that to

2    be entitled to rely upon his Fifth Amendment right to remain silent to exclude

3    prosecutorial use of silence, a defendant must have expressly invoked that right, and

4    cannot simply remain silent. "A suspect who stands mute has not done enough to put

5    police on notice that he is relying on his Fifth Amendment privilege." *Salinas v. Texas*,

6    133 S.Ct. 2174, 2182 (2013).[14]

7    However, *Salinas* dealt with the propriety of police continuing questioning after

8    what the defendant argued was a tacit invocation of his right to remain silent in a pre-

9    custody, pre-*Miranda* setting.  At least one state court has concluded post-*Salinas* that in

10    situations involving "post-arrest, post-*Miranda* silence," (rather than the pre-arrest, pre-

11    *Miranda* silence in *Salinas*) an explicit invocation is still not required. *Coleman v. State*,

12    434 Md. 320, 334, 75 A.3d 916, 924 (2013).

13    The courts have long found different standards apply based upon whether the

14    silence was pre- or post-arrest, and pre- or post-*Miranda* warnings (and whether it is

15    offered as evidence of guilt or for impeachment).  *See e.g.  U.S. v. Velarde-Gomez*, 269

16    F.3d 1023 (9th Cir. 2001).  Indeed, the *Salinas* decision recognized that no invocation is

17    required post-arrest, pre-*Miranda*. "[I]n *Miranda*, we said that a suspect who is subjected

18    to the 'inherently compelling pressures' of an unwarned custodial interrogation need not

19    invoke the privilege." *Salinas,* 133 S.Ct. at 2180.

20    It is true that post-arrest, pre-*Miranda* silence may be used against a defendant for

21

22    [13] *Salinas* was a plurality decision, with only three justices (Alito, Roberts and
Kennedy) joining in the opinion. Justices Thomas and Scalia joined in the judgment,
believing that the Fifth Amendment never precludes comments on silence.  Four justices
(Breyer, Ginsburg, Sotomayor and Kagan) joined in a dissent, arguing that the
defendant's silence was a plain, albeit implicit, invocation of the right to  remain silent,
and thus the prosecution could not comment on his silence.

25    [14] Respondents also point to *Berghuis v. Thompkins*, 560 U.S. 370 (2010) for the
proposition that silence is not sufficient to invoke the right to remain silent.  However,
*Berghuis* did not deal with prosecutorial use of silence, but upon the obligation of police
to cease questioning.  *See Miranda v. Arizona*, 384 U.S. 436, 473-74 (1966) ("If the
individual indicates in any manner, at any time prior to or during questioning, that he
wishes to remain silent, the interrogation must cease.")  Here, the argument by Petitioner
is that the prosecution improperly used his silence, not that questioning did not cease
when required under *Miranda*.

impeachment purposes. "In the absence of the sort of affirmative assurances embodied in the *Miranda* warnings, we do not believe that it violates due process of law for a State to permit cross-examination as to post-arrest silence when a defendant chooses to take the stand." *Fletcher v. Weir*, 455 U.S. 603, 607 (1982).  *See also Brecht v. Abramson*, 507 U.S. 619, 628 (1993).  But here, Petitioner did not testify.  And, the prosecution may not use a defendant's post-arrest, pre-*Miranda* silence against him in its case-in-chief.  *U.S. v. Whitehead*, 200 F.3d 634, 639 (9th Cir. 2000).

Accordingly, neither Petitioner's post-*Miranda* silence nor his pre-*Miranda* silence could be used against him without violating Petitioner's right to remain silent. The testimony by the arresting officer about Petitioner's refusal to respond and provide his name was just such a violation.

No Prejudice -  A violation of the right to remain silent is not a get-out-of-jail-free card.  Rather, a defendant has a burden of showing that the error "affected the outcome of the [trial] court proceedings." *Whitehead*, 200 F.3d at 639 (quoting *U.S. v. Olano*, 507 U.S. 725, 734 (1993)). "When deciding whether a prosecutor's reference to a defendant's post-arrest silence was prejudicial, this court will consider the extent of comments made by the witness, whether an inference of guilt from silence was stressed to the jury, and the extent of other evidence suggesting defendant's guilt." *Guam v. Veloria*, 136 F.3d 648, 652 (9th Cir.1998).

Here, the comments by the arresting officer were not extensive, and were part of a larger, permissible narrative that Petitioner's demeanor was that of a belligerent, cursing, yelling, and uncooperative person. *Cf. Veloria*, 136 F.3d at 652 (prejudice found where testimony on silence was only reason to call witness).

And, while the prosecution certainly echoed the belligerence and uncooperativeness of Petitioner, no explicit reference was made to Petitioner's silence. Rather, the tenor of the prosecutions' argument at closing was to counter the assertion made by defense counsel in his closing argument that Petitioner had been cooperative

1   with the police.

2        Perhaps most importantly, here there was strong and convincing evidence of

3   Petitioner's guilt, including the victim's identification of Petitioner and narrative of

4   Petitioner's presence shortly before the car and keys were discovered missing, and

5   Petitioner's possession of the car and keys at the time of arrest.  On the other hand, the

6   only significant exculpatory evidence was the purported disparities between the victim's

7   statements to police and his in-court identification, and the vagueness of his original

8   description of Petitioner.  Under these circumstances, the undersigned cannot conclude

9   that the limited references to Petitioner's silence affected the outcome of the trial

10  proceedings.

11       Accordingly, Ground Four is without merit and must be denied.

12

13  **I. SUMMARY**

14       Petitioner failed to properly exhaust, and now has procedurally defaulted, his state

15  remedies on: (1) the portion of Ground One based upon a failure to disclose the victim's

16  prior description; and (2) the portion of Ground Two based upon the ineffective

17  assistance of trial counsel in failing to request a *Donald* hearing at the settlement

18  conference.  These claims must be dismissed with prejudice.

19       The remainder of the Petition is without merit, and must be denied.

20

21           **IV.  CERTIFICATE OF APPEALABILITY**

22       **Ruling Required** - Rule 11(a), Rules Governing Section 2254 Cases, requires

23  that in habeas cases the "district court must issue or deny a certificate of appealability

24  when it enters a final order adverse to the applicant."  Such certificates are required in

25  cases concerning detention arising "out of process issued by a State court", or in a

26  proceeding under 28 U.S.C. § 2255 attacking a federal criminal judgment or sentence. 28

27  U.S.C. § 2253(c)(1).

28
                              52

Here, the Petition is brought pursuant to 28 U.S.C. § 2254, and challenges detention pursuant to a State court judgment.  The recommendations if accepted will result in Petitioner's Petition being resolved adversely to Petitioner.  Accordingly, a decision on a certificate of appealability is required.

**Applicable Standards** - The standard for issuing a certificate of appealability ("COA") is whether the applicant has "made a substantial showing of the denial of a constitutional right."28 U.S.C. § 2253(c)(2).  "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Id.*

**Standard Not Met** - Assuming the recommendations herein are followed in the district court's judgment, that decision will be in part on procedural grounds, and in part on the merits.

To the extent that Petitioner's claims are rejected on procedural grounds, under the reasoning set forth herein, the undersigned finds that "jurists of reason" would not "find it debatable whether the district court was correct in its procedural ruling."

To the extent that Petitioner's claims are rejected on the merits, under the reasoning set forth herein, the constitutional claims are plainly without merit.

Accordingly, to the extent that the Court adopts this Report & Recommendation as to the Petition, a certificate of appealability should be denied.

## V.  RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that the Petitioner's Petition for Writ of Habeas Corpus, filed December 7, 2012 (Doc. 1) be **DISMISSED WITH PREJUDICE** as to : (1) the portion of Ground One based upon a failure to disclose the victim's prior description; and (2) the portion of Ground Two based upon the ineffective assistance of trial counsel in failing to request a *Donald* hearing at the settlement conference.

**IT IS FURTHER RECOMMENDED** that the remainder of Petitioner's Petition for Writ of Habeas Corpus, filed December 7, 2012 (Doc. 1) be **DENIED**.

**IT IS FURTHER RECOMMENDED** that to the extent the reasoning of this Report & Recommendation is adopted, a Certificate of Appealability be **DENIED**.

## VI. EFFECT OF RECOMMENDATION

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to *Rule 4(a)(1), Federal Rules of Appellate Procedure*, should not be filed until entry of the district court's judgment.

However, pursuant to *Rule 72(b), Federal Rules of Civil Procedure,* the parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the Court.  *See also* Rule 8(b), Rules Governing Section 2254 Proceedings.    Thereafter, the parties have fourteen (14) days within which to file a response to the objections.  Failure to timely file objections to any findings or recommendations of the Magistrate Judge will be considered a waiver of a party's right to *de novo* consideration of the issues,  *see United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003)(*en banc*),  and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant

54

to the recommendation of the Magistrate Judge, *Robbins v. Carey*, 481 F.3d 1143, 1146-47 (9th Cir. 2007).

Dated: December 9, 2013

12-2606r RR 13 07 23 on HC.docx

_____
James F. Metcalf
United States Magistrate Judge

55